UNITED STATES of America, Appellee,

v.

Bennie MILLER, Appellant.

No. 76–1584.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1976.

Decided Nov. 4, 1976.

Lawrence O. Willbrand, St. Louis, Mo., for appellant.

Barry A. Short, U. S. Atty. and Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, HEANEY and WEBSTER, Circuit Judges.

## PER CURIAM.

Defendant, Bennie Miller, appeals his conviction on ten counts of violating 7 U.S.C. § 2023(c) (1970). Section 2023(c) renders it illegal to present for payment or redemption food stamp coupons which have been received in a manner contrary to the statutory and regulatory structure of the Food Stamp Program, 7 U.S.C. § 2011 *et seq.* (Supp. V, 1975). Miller was sentenced to six months on Count I, fined $5,000 on Count II and received three years probation on the remaining counts, to commence after the six month sentence.

At trial, the Government proved that on February 25, 1976, Miller, using the name William Gray, purchased a retail enterprise called the Little Beauty Confectionary located in St. Louis, Missouri. Prior to the sale, the Little Beauty Confectionary's food sales amounted to approximately $1,700 per month and the owner redeemed food stamp coupons totaling approximately $100 per month. After purchasing the Little Beauty Confectionary, Miller changed its name to Gray's Food Shop. On March 10, 1976, Miller used the name William Gray again to secure authorization from the United States Department of Agriculture (U.S.D.A.) to accept food stamps as a retail grocer. Miller then opened an account in the name of Gray's Food Shop at the Cass Bank and Trust Company in St. Louis. Miller proceeded to make the following daily deposits of food stamp coupons into that account:

| March | 15, | 1976 | $3,363 |
|-------|-----|------|--------|
| March | 16, | 1976 | 2,822 |
| March | 17, | 1976 | 2,831 |
| March | 18, | 1976 | 3,746 |
| March | 19, | 1976 | 3,513 |
| March | 22, | 1976 | 3,403 |
| March | 23, | 1976 | 3,273 |
| March | 24, | 1976 | 3,222 |
| March | 25, | 1976 | 3,284 |
| March | 26, | 1976 | 2,954 |

The total deposits of food stamp coupons for these ten days were $32,411.

An investigation was immediately undertaken by the U.S.D.A. to determine the legitimacy of the apparent financial good fortune of Gray's Food Shop. Charles Thornton, a U.S.D.A. agent, contacted Miller at Gray's Food Shop to inquire as to the amount of food sales made by the business. Miller voluntarily furnished Thornton with several invoices for the purpose of substantiating the food sales of Gray's Food Shop.

Some of these invoices were from Schulze & Burch Biscuit Co. (Schulze). Cecil Hawthorne, sales supervisor for Schulze, testified that these were fictitious sales invoices and were executed only for the purpose of artificially enhancing the sales volume of Gray's Food Shop. Another invoice reflected that food purchases had been made from Walter Katzering of 1920 Palm Street in St. Louis. Investigation established that only a vacant lot was located at 1920 Palm Street. An employee at Gray's Food Shop testified that the food stamp intake at the store amounted to only approximately $100 per week and that business was light. Finally, the Government presented a Missouri sales tax return for Gray's Food Shop showing gross sales of $30,142.45 for the period extending from February 24, 1976, to April 2, 1976. The gross sales reported for this five-week period were less than the total food stamp deposits made by Miller over the two-week period in March.

Miller's only defense at trial was that the food coupons deposited in March, 1976, were not derived solely from Gray's Food Shop. He testified that he was a co-owner of a retail grocery called Cotton's Market and

that most of the food coupons deposited in March were received by him from Cotton's Market. The jury chose to disbelieve Miller's version and convicted him on all ten counts, which were based on the ten separate March deposits.

Miller's initial contention on this appeal is that the District Court erred in refusing to grant Miller's motion for judgment of acquittal at the close of all the evidence at trial on the basis of insufficient evidence.

To prove a felony violation of § 2023(c), the Government must show that (1) defendant offered or caused to be offered food stamp coupons for payment or redemption; (2) the value of the coupons equalled or exceeded $100; and (3) defendant knew that the coupons had been received, transferred or used in a manner which contravened some statutory or regulatory provision of the Food Stamp Program. Our review of the record in this case convinces us that the Government proved each of these elements. Gray's Food Shop could not have generated the volume of food sales even roughly commensurate with the amount of food stamp coupons deposited in the account by Miller. Miller used false and fictitious invoices for the purpose of establishing a deceptively high sales volume for his store. Such evidence allows a permissible inference that Miller was aware that the coupons he deposited were received in violation of the Food Stamp Program. Miller's explanation that the coupons were secured from Cotton's Market rather than Gray's Food Shop raised a question of credibility, the resolution of which rested solely in the province of the jury. *Petschl v. United States*, 369 F.2d 769, 771 (8th Cir. 1966). The jury need not accept the defendant's exculpatory version of the events underlying the indictment. *United States*

*v. Castro*, 476 F.2d 750, 753 (9th Cir. 1973).[1] We conclude that the District Court did not err in overruling Miller's motion for judgment of acquittal.

Miller also contends that the District Court misled the jury by reading selected portions of § 2023(c) in its charge to the jury. In its instructions, the District Court stated:

> The prosecution in this case is based on a statute which reads in pertinent part as follows:
>
> "Whoever presents * * * coupons for payment or redemption of the value of $100 or more, knowing the same to have been received * * * in any manner in violation of the provisions of this chapter [7 U.S.C. ch. 51] or the regulations issued pursuant to this chapter shall be guilty [of an offense against the United States]."

Miller contends that the District Court's failure to particularize the regulations that were allegedly violated granted the jury a "roving commission" to find Miller in violation of regulations which were not in evidence at trial. This contention is lacking in merit. It is fundamental that the instructions are to be considered as a whole, not in isolation. *United States v. Cartano*, 534 F.2d 788, 793 (8th Cir. 1976). After reading the statutory language outlined above to the jury, the District Court immediately read the indictment which charged Miller with receiving food stamp coupons without corresponding sales of "eligible food" as defined in the regulations. The District Court then set forth the elements of proof which required the Government to establish that Miller knew the food stamp coupons had been received without corresponding sales of "eligible food".[2] The court there-

---

1. The Government presented evidence which undermined Miller's theory of defense at trial. Agent Thornton testified that Miller had informed him that the entire amount of food stamp coupons deposited in the Gray's Food Shop account was derived from authorized food sales at the Gray's Food Shop. This testimony provided the jury with a firm basis for discrediting Miller's testimony at trial.

2. Neither the indictment nor the instruction to the jury cited or quoted the regulation that Miller allegedly violated. It is clear that Miller was convicted of presenting food stamp coupons, which had been received in violation of 7 C.F.R. § 272.2(b) (1976), which specifies that coupons may be accepted only in exchange for "eligible food". *See* 7 U.S.C. § 2018 (1970).

after defined "eligible food" as any food product for human consumption except alcoholic beverages or tobacco. Consequently, the jury was fully apprised and specifically instructed as to the nature of the precise provision that Miller allegedly violated. The reading of the statute was not misleading and the instructions, viewed in their entirety, fully set forth the governing law.

 Finally, Miller seeks reversal of his conviction on the basis that the District Court erred in failing to sustain Miller's motion for a bill of particulars. The indictment charged Miller with presenting food stamp coupons for payment or redemption "knowing the same to have been received in a manner in violation of this chapter [7 U.S.C. ch. 51] and the regulations issued pursuant to this chapter * * *." Miller moved for a bill of particulars to determine whether the word "received" meant received by Miller or received by others. At a hearing on the motion, the Government stated that the indictment charged Miller with personally receiving the coupons. Based upon this clarification, the District Court overruled Miller's motion. The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial. *United States v. Martinez*, 466 F.2d 679, 686 (5th Cir. 1972), *petition for rehearing denied*, 481 F.2d 896, *cert. denied sub nom. Berman v. United States*, 414 U.S. 1065, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). There is no basis for concluding that the language of the indictment, as supplemented by the Government's clarification at the hearing, failed to apprise Miller of the nature of the charges against him. The District Court did not abuse its discretion in refusing Miller's request for a bill of particulars. *United States v. Gray*, 464 F.2d 632, 635 (8th Cir. 1972).

Miller also argues that the jury was not properly instructed as to whether the word "received" in the indictment referred to receipt by Miller or receipt by others. As previously indicated, the instructions were complete and free from error.

Affirmed.