483 F.Supp. 523 (1980)
UNITED STATES of America, Plaintiff,
v.
R. C. FRENCH, Defendant.
No. 79-124Cr(B).
United States District Court, E. D. Missouri, E. D.
January 11, 1980.
Stephen B. Higgins, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.
Charles Shaw, Clayton, Mo., for defendant.

MEMORANDUM AND ORDER
REGAN, District Judge.
Defendant French was found guilty on Counts V and VI of an indictment charging him with violating Section 1951, 18 U.S.C. He was acquitted on all other counts charging him with similar offenses. Theretofore, at the close of all the evidence, French had moved for a judgment of acquittal. We reserved ruling the motion. The motion is now before us for disposition.
Section 1951 (the Hobbs Act) proscribes extortion which in any way or degree obstructs, delays or affects commerce. "Extortion" as used in the statute includes "the obtaining of property from another, with his consent, induced . . . . under color of official right." Extortion under color of official right is the wrongful taking by a public officer of money or property not due him or his office.
*524 The motion for acquittal brings into question the sufficiency of the evidence to warrant a finding either of extortion or of an adverse effect of the alleged extortion upon commerce. In determining this issue, we, of course, view the evidence in the light most favorable to the government.
At the times in question French was the Marshal of the City of St. Louis, one of whose duties (under the City Charter) was to collect the full amounts of bail bond judgments pursuant to judgment orders of the City Court. Count V of the indictment charged that French unlawfully affected commerce or attempted to do so by obtaining under color of official right the sum of $300, not due him or his office, directly or indirectly from Claude Torrey, a bail bondsman, in return for not complying with an order of the St. Louis City Court to collect the full amount of three bond judgments owed the City of St. Louis by said bondsman. Count VI, which involved only one bond judgment charges a similar offense except for the date and the amount French allegedly obtained from the bondsman.
The government's evidence was to the effect that although French was ordered to collect the full amount owing to the City by the bondsman, he would (without specific authority) "compromise" and satisfy each $512 bond forfeiture judgment for less than the full amount. The procedure he followed with respect to each judgment was to obtain from Torrey a check payable to the City of St. Louis in the amount of either $212 or $262 and a cash payment of $100, representing that he (French) intended to pocket the cash, in return for French's promise not to collect the balance owing the City. In each instance the total payments by Torrey were in an amount substantially less than he owed the City. As the result, Torrey was enabled to continue to engage in his bail bond business.[1]
Understandably, Torrey would have preferred not to pay the $100 in cash to French in addition to the check for $212. However, it is obvious that, realistically, it was immaterial to him whether that cash payment was remitted to the City or was kept by French, so long as the total payment he made was substantially less than the amount owing by him. From his point of view as a businessman, Torrey was eliminating a $512 judgment debt for the sum of $312. Confronted with the choice of paying $512 or of paying $312 to be relieved of his judgment debt, Torrey obviously chose the latter. His choice would have been the same whether or not he was aware that French would appropriate to his own use $100 of the sum paid by Torrey.
The basic facts in this case are unlike those in any reported case to which we have been cited or of which we are aware in which the alleged extortion was under color of official right. In the instant case (under the government's evidence), it was French's duty to collect (and the obligation of Torrey to pay) $512, the full amount of each judgment. French had no authority to accept less than that amount by way of "compromise." Hence, all the money paid by Torrey to French was due the office of French as the city's collection agent. Theoretically, of course, Torrey may have been "compromising" (without consideration therefor) each judgment against him for $212, but as a practical business matter he was paying to the office of the Marshal the sum of $312 with the resultant saving of $200 on each judgment.
There is no theory under which the $100 cash per judgment which Torrey paid to French was not rightfully money which belonged to the City. The fact that French disclosed to Torrey his intention to keep the $100 cash instead of remitting it to the City does not metamorphasize an embezzlement into an extortion situation. Unquestionably, as we have stated, Torrey would have paid to the office of the Marshal the $312 in one payment (either by check or in cash) in order to effect a saving to him of $200 even if he had not been told that French intended to embezzle the $100.
*525 By way of contrast, in none of the cases sustaining convictions under the Hobbs Act was the money which the defendant extorted actually owing, directly or indirectly, to the defendant or to his office. The typical Hobbs Act "color of official right" prosecutions involve situations where money is paid or sought for the avoidance of police or other official harassment or where an official obtains money for official favors.
For example, in United States v. Brown, 8 Cir. 1976, 540 F.2d 364, contractors made apartment rental payments for Brown's benefit in return for what they believed would be a friendly relationship toward them in his capacity as the city's Building Commissioner. Under no view of the facts could the amount of the rental payments be held to be payable or owing to the City or to the office of Brown. In United States v. Rabbitt, 8 Cir. 1978, 583 F.2d 1014, the defendant, Speaker of the Missouri House of Representatives, obtained a substantial sum of money in return for his "services" in steering to passage by the House a bill in which those paying the money were interested. Again, as in Brown, the money could not conceivably be held to be owing to the State of which the defendant was an official. And in U. S. v. Adcock, 8 Cir. 1977, 558 F.2d 397, the defendant, Chairman of the Iowa Liquor Control Commission, obtained money and property in return for official favors. In another Eighth Circuit case, U. S. v. Merry, 8 Cir. 1975, 514 F.2d 399, the defendant, a police officer, threatened official action against the operator of a massage parlor if substantial sums of money were not paid to the defendant. All of the cases in other circuits which we have studied also involve factual situations in which the money paid or demanded was not due or owing. None of them arose in an embezzlement context.
We hold that inasmuch as all of the moneys paid by Torrey under color of his office were actually owing to the office of the marshal as agent of the City, the receipt and retention by French of the cash payments would constitute embezzlement, a state offense, rather than extortion.
We are also convinced that the evidence wholly fails to show the requisite effect upon interstate commerce. There can be no doubt that for purposes of the Hobbs Act "(t)he connection with interstate commerce need only be slight." U. S. v. Rabbitt, supra, 583 F.2d at 1023. As held in Rabbitt: "If the resources of a business which affects interstate commerce are depleted and diminished as a result of extortion, then interstate commerce is affected." So, too, it is not necessary that the subject of the extortion constitute interstate commerce or that its purpose be to affect such commerce. U. S. v. Spagnolo, 4 Cir. 1976, 546 F.2d 1117.
In the instant case, the government's proof was to the effect that the activities of the bondsman affected commerce to some slight extent. However, what we are here concerned with is whether the "extortion in some degree, however slight, affected interstate commerce." Under the explicit language of Section 1951, that is the crux of the offense. The evidence sufficiently showed that Torrey, in his bail bond business, made purchases of services and supplies which originated in other states, the government's theory being that the allegedly extortionate payments diminished or depleted his resources available for such purposes. We do not question the correctness of this theory, but find it inapplicable under the instant facts.
In the usual Hobbs Act case, it is obvious that the extortionate payments of moneys which were not owing would necessarily, even though only slightly, diminish the resources which would be available for activities affecting commerce. In the present case, however, it is clear that as the result of making the cash payment of $100 to French, Torrey's resources for his purchases of services and supplies were increased, not diminished. That is, had he paid what he justly owed (the full amount of the judgment) his available resources would have been substantially less than the amount thereof which remained after making the $100 payment. Since French, under the government's evidence (and the indictment), *526 had no authority to accept less than the full amount of the judgment, it follows that as the result of the unauthorized "compromise" Torrey received a benefit to which he was not entitled and which he could not have insisted upon. Thus, after making the cash payments of $100, which were misappropriated by French, Torrey had some $200 in "windfall profits" on each judgment with which to purchase supplies and services, a sum which would not have been available to him but for the "compromise."
We add that whatever may have been the derelictions of French, we are limited in our consideration of the motion for acquittal to the specific factual allegations set forth in Counts V and VI. It is on that basis we have concluded that the motion should be sustained.
Accordingly, IT IS HEREBY ORDERED that the motion of defendant French for acquittal on Count V and VI should be and it is hereby sustained. The judgment of conviction on Counts V and VI of the indictment is hereby set aside and vacated and the Clerk is hereby ordered to enter a judgment of acquittal on both of said Counts.
NOTES
[1] Rules 32.14 and 37.107 of the Missouri Supreme Court prohibit bail bondsmen with outstanding forfeiture judgments from writing bail bonds anywhere within the State of Missouri.