**UNITED STATES of America, Appellee,**

v.

**R. C. FRENCH, Appellant.**

**No. 81–1968.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1982.

Decided July 28, 1982.

Rehearing and Rehearing En Banc
Denied Aug. 24, 1982.

Certiorari Denied Nov. 1, 1982.

See 103 S.Ct. 304.

Thomas E. Dittmeier, U. S. Atty., Timothy J. Wilson, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Shaw, Howlett & Schwartz by Charles M. Shaw, Clayton, Mo., for appellant.

Before HEANEY, ARNOLD and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The significant issue in this appeal is whether defendant R. C. French, in purchasing food stamps from undercover police officers, was entrapped as a matter of law. This in turn involves the question of whether French had the predisposition to commit these criminal acts. The defense of entrapment and the issue of French's predisposition was submitted to the jury[1] and French was convicted of three counts of acquiring and possessing food stamps in a manner not authorized by law or regulations, in violation of 7 U.S.C. § 2024(b). He was sentenced to imprisonment of five years and a fine of $1,000 on each count, the sentences to run concurrently. We affirm the judgment of the district court.

■ For French to establish that there was entrapment as a matter of law and that he was entitled to acquittal,

> [T]he evidence must clearly have indicated that a government agent originated the criminal design; that the agent implanted in the mind of an innocent person the disposition to commit the offense; and that the defendant then committed

---

[1]. The instruction, patterned after 1 E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 13.09, and approved in *United States v. Shaw, infra*, was given:

> If, then, the jury should find beyond a reasonable doubt ... the defendant was ready and willing to commit crimes ... whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.
> On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the government, then it is your duty to find him not guilty.

the criminal act at the urging of the government agent.

*United States v. Shaw,* 570 F.2d 770, 772 (8th Cir. 1978); *see also United States v. Gurule,* 522 F.2d 20, 23 (10th Cir. 1975), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). The evidence must thus be examined to determine whether the police officers implanted the disposition in an innocent French to purchase the food stamps, or whether French had a predisposition to purchase the stamps and violate the law and the agents simply provided this opportunity to him.

■ In determining whether there was a jury issue on the question of entrapment, we must review the evidence in the light most favorable to the government. *United States v. Brown,* 453 F.2d 101, 104 (8th Cir. 1971), *cert. denied* 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *United States v. Jannotti,* 673 F.2d 578, 598 (3d Cir. 1982). *See also: Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Marvin Koechig, Jr., a Special Agent with the Office of the Inspector General of Investigation, United States Department of Agriculture, first became interested in defendant R. C. French when he read accounts in both St. Louis newspapers about French's earlier federal prosecution.[2] French's lawyer was quoted as saying that French was working 60 to 80 hours in a grocery store. Koechig found that the store, Courtesy Country Store, 5903 Delmar, St. Louis, had been the subject of a request for criminal investigation in September 1980, and that its food stamp volume was more than 100% of the gross reported sales. Koechig had no knowledge that French was dealing in food stamps, but knew only of the reported conviction.

■ Koechig contacted St. Louis Police Officer Antinoette Lee, who worked undercover with him on earlier occasions in looking for food stamp violators. Koechig provided Lee with three $50 books of food stamps and drove her to the Courtesy Country Store on January 7, 1981. When she entered the store, she heard a stock boy refer to the person behind the meat counter as Mr. French. She approached French and asked him if he knew of anyone that was discounting food stamps.[3] French answered, "The owner doesn't like for us to do it, but how many books do you have?" Lee told him she had three $50 books, and he offered her $50 for them. She protested the price was cheap, but French said, "take it or leave it," and they exchanged the three books of stamps for $50.[4]

■ Several months later, Koechig used an informant, James Louis, to again locate French. French was working in a dry cleaning store. Louis introduced French to another undercover police officer, Roslyn Morgan. Officer Morgan was equipped with a recording device and on June 25 drove with Louis to the cleaners. French came to the car,[5] and said that as his wife

---

**2.** *United States v. French,* 483 F.Supp. 523 (E.D.Mo.1980), *rev'd* 628 F.2d 1069 (8th Cir. 1980), *cert. denied* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980). French's conviction for use of his official office to collect funds illegally was set aside by the district court, but reinstated by this court.

**3.** Discounting is a common term for exchanging food stamps for money unlawfully and is readily understood by those who deal with food stamps. Lee admitted French asked the meaning of the term, although earlier in her testimony she had denied he asked the question.

**4.** French's recollection of the conversation with Lee differed. French says he told Lee that he didn't buy food stamps and that she answered, "You was my last hope and I am desperate." French then asked how many stamps she had,

and made the statement that the management didn't allow them to buy anything inside the store. Lee repeated that he was her last hope as she needed money for the rent, and told him she had six books to sell. French said that he didn't have that much money, asked Lee's price and said he didn't know the price because he had never bought stamps. French said he had $50, obtained another $25 from one of the clerks working in the store, and bought the three books from Lee for $75. With this conflicting evidence, the issue of entrapment was properly submitted to the jury. *United States v. Shaw, supra* at 772; *United States v. Gurule, supra* at 23.

**5.** This and succeeding conversations with French were recorded. The tapes were introduced into evidence and played to the jury.

didn't have the money, he couldn't "come up with the loot," and told Morgan to get in touch with him later. Morgan twice said she could put her hands on as many stamps as she could get rid of, and French twice replied, "You can?" French told Morgan that other persons, Sweeney and Clemmons, would take the stamps. Nothing was worth going to the penitentiary for, French said. Morgan continued the conversation by suggesting that they go for thirds on whatever she had, and French replied, "Okay ... I know I can handle some." French was specific that Louis, and not Morgan, was to call him at home, but they discussed what additional stamps Morgan would bring. French said, "I can take a bill thing 'cause I supposed to pick up some money this afternoon." After considerable haggling, the conversation closed with French buying three of the books for $65 and agreeing that when Louis called, French would tell him how many books to bring.

The following day, June 26, 1981, French purchased five books from Morgan for $100 and he said, "I'll enjoy spending those...." He again said that nothing was worth going to the penitentiary for, and agreed that Morgan would call the store later.[6]

In other later conversations, on June 30 and July 2, French, while making purchases of stamps, made other statements that he was going to stock up while he got a chance, that he had enough stamps to last six months and that he was going to get more and use them to buy food while he opened a cleaning and grocery store business.

We reject French's arguments that undisputed facts establish entrapment as a matter of law as in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Further, the evidence does not clearly show that the government agent originated the criminal design or implanted in the mind of an innocent person the disposition to buy the food stamps, or that

French bought the food stamps at the urging of the government agent. *United States v. Shaw, supra.*

■ Police Officer Lee went to the grocery store where food stamp redemptions exceeded sales, and where French was employed. Her initial contact with French, viewed most favorably to the government, contained nothing more than a question as to whether he knew if anyone was discounting food stamps. French's immediate response that led to the purchase of the stamps demonstrated predisposition on his part. Lee's question merely afforded the opportunity or facility for the commission of the offense and was not entrapment. *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

The purchase of contraband by the government agent was held not to be entrapment in *Kibby v. United States*, 372 F.2d 598, 602 (8th Cir. 1967), *cert. denied* 387 U.S. 931, 87 S.Ct. 2055, 18 L.Ed.2d 993 (1967). Here we deal with a sale instead of a purchase, but this first sale does not show any urging by the government agent or implanting in the mind of an innocent the disposition to purchase. Insofar as French's testimony differs from that of Lee, it simply creates a conflict of evidence that was properly submitted to the jury.

■ The predisposition demonstrated by French in January was relevant to the question of his predisposition to buy stamps in June and July. *United States v. Demetre*, 464 F.2d 1105, 1108 (8th Cir. 1972); *United States v. Viviano*, 437 F.2d 295 (2d Cir. 1971), *cert. denied* 402 U.S. 983, 91 S.Ct. 1659, 29 L.Ed.2d 149 (1971). When Officer Morgan first approached French on June 25, her statement that she could put her hands on as many stamps as she could get rid of brought an immediate expression of interest from French—"You can?"—, suggestions of other individuals that might be interested in stamps, discussions of later telephone calls and an immediate agree-

---

Transcripts of the conversation were used in examining the witnesses.

**6.** Count I of the charges against French was based on the January 7 purchase, Count II on the June 25 purchase, and Count III on the June 26 purchase.

ment to purchase three or four books. While the conversation reveals that Morgan was much more aggressive than Lee in her contacts with French on June 25 and June 26, artifice and stratagem may be employed to catch those engaged in criminal enterprises. *Sorrells v. United States, supra.* Morgan may have continued the conversation more determinedly, and she may have cajoled and implored defendant to buy the stamps, but such activity creates a factual issue as to whether there is entrapment. *Kibby v. United States*, supra at 602; *United States v. Emory*, 468 F.2d 1017, 1019 (8th Cir. 1972).

■ We have carefully analyzed the conversations of January 7, June 25 and June 26. We conclude that these conversations and the activities of the undercover officers were sufficient to justify a jury concluding beyond a reasonable doubt that French was predisposed to buy the food stamps. Accordingly, the undercover officers did not set a "trap for the unwary innocent" but, rather, a "trap for the unwary criminal." *See: Sherman v. United States*, 356 U.S. at 372, 78 S.Ct. at 821, 2 L.Ed.2d at 851.

The cases cited by French, *Sorrells v. United States, supra; Sherman v. United States, supra; United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); and *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), do not support his argument that acquittal was required in this case, but demonstrate that the critical issue was whether French was predisposed to buy the food stamps.[7] This issue was submitted to and decided by the jury. The district court did not err in denying defendant's motion for acquittal.

■ French urges other trial errors. He argues that the indictment failed to define a criminal act and was not sufficiently clear as to properly and constitutionally state the wrong committed. The indictment charged in each of the counts that on a specified date the defendant "did knowingly acquire and possess food stamps . . .[8] in a manner not authorized by Chapter 51, Title 7, United States Code, or the regulations issued pursuant to such chapter, in violation of Title 7, United States Code § 2024(b)." The indictment follows the wording of the statute. It fully, expressly and without ambiguity sets forth the elements necessary to constitute the offense, and contains a statement of facts and circumstances sufficient to inform the accused of the offense with which he is charged. *Hamling v. United States*, 418 U.S. 87, 117–120, 94 S.Ct. 2887, 2907–2909, 41 L.Ed.2d 590, 620–22 (1974). In *United States v. Miller*, 543 F.2d 1221, 1224 (8th Cir. 1976), *cert. denied* 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561 (1977), we held that a similarly worded indictment apprised defendant of the charges against him, particularly in light of clarification at a pretrial hearing. As French's counsel was furnished the tapes of the conversations before trial, *Miller* dictates the same result in this case. French's arguments concerning the indictment are without merit.

■ French argues that his acquisition and possession of the stamps was lawful, presumably because they were purchased from a government agent.[9] We agree with the rejection of a somewhat similar argument in *United States v. Stencil*, 629 F.2d 984, 985 (4th Cir. 1980):

In 7 U.S.C. § 2024(a), Congress authorized the issuance or presentment of food

---

7. Entrapment was discussed in detail in a recent decision of the Third Circuit arising out of the Abscam operation, *United States v. Jannotti*, 673 F.2d 578 (3d Cir. 1982). Both the majority and vigorous dissenting opinion in Jannotti recognize that predisposition is the determinative issue. Where there is proof of predisposition to participate in the illegal activity, even the dissent would recognize the submissibility of the issue in this case. *Id.* at 616–617.

8. French was charged with purchasing food stamps valued at $150 in Counts I and II and $250 in Count III.

9. He argues alternatively that the government agent had authority to make the sale of the food stamps, and that he did not have the authority to make the sale.

stamps for enforcement purposes. In 7 U.S.C. § 2024(b), Congress made the unauthorized acquisition of food stamps a crime. Obviously, Congress did not intend to exempt from criminal penalties anyone who acquired food stamps from an undercover agent. The fact that a seller is authorized to sell does not mean that the buyer must necessarily be cloaked with authority to buy.

French argues that the evidence was insufficient to prove a violation of the law and that the court erred in overruling his motion to dismiss for insufficient evidence. French seems to argue, ignoring the statute in question, that his use of the stamps or his transfer of them for money must be shown. These arguments, unsupported by authority, are without merit.

French complains of error in the instructions concerning the food stamp program. The instructions, considered as a whole, adequately explained the regulations and the substance of the relevant statutes, and included an explanation that the food stamp program was established for the purpose of making food available to eligible individuals through approved retail food stores. French complains of failure to instruct on a specific regulation relating to participation by banks (Regulation 278.5) and claims that this was the only regulation relating to use of food coupons to detect food stamp violations. This objection was not made at the time of trial, and the regulation had no bearing on the issues being tried. French demonstrates no error in the instructions given by the district court.

French argues that the United States Attorney repeatedly referred to French's prior conviction for purposes other than to test credibility. Our study of the record reflects that the prior conviction was first brought before the jury by French's counsel, who repeatedly questioned French and other witnesses on this subject during trial.

French objects to statements made by the prosecution during the examination on the earlier conviction. These questions or statements were phrased with reference to credibility. The jury was instructed that the conviction was to be considered "only insofar as it affects the credibility of the defendant as a witness, and must not be considered as evidence of guilt of the offense for which the defendant is on trial."

French also objects to a statement of counsel during argument that "immediately after he's put on probation, R. C. French doesn't miss one beat … in working out some scheme to abuse the system." Although this statement may deal with more than the question of credibility, it must be viewed in the context of the entire trial. *United States v. Phillips*, 482 F.2d 191, 196 (8th Cir. 1973), *cert. denied* 414 U.S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973). The court instructed the jury that arguments of counsel were not evidence. In the context of the entire record, we cannot find that this statement, or the areas of interrogation on credibility, constituted prejudicial error.

Having carefully considered the arguments advanced by appellant French, we find no reversible error by the district court. The judgment is affirmed.