**Larry HOLMES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 83–1246.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 3, 1983.

Decided June 13, 1983.

Gene E. McKissic, Pine Bluff, Ark., for appellant; Jesse L. Kearney, Pine Bluff, Ark., of counsel.

George W. Proctor, U.S. Atty., Robert L. Neighbors, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PER CURIAM.

Larry Holmes was convicted of four counts of illegally purchasing food stamps in violation of 7 U.S.C. § 2024(b). Holmes appeals and argues that the trial court should have granted his motion for acquit-

tal because he established as a matter of law that he was entrapped into committing the crimes with which he was charged, and that there was insufficient evidence to sustain his conviction. We affirm.

The government's sole witness at trial was Arkansas State Police Officer Jimmy C. Morris. He testified that on four separate occasions Holmes purchased food stamps from him while Morris was acting in an undercover capacity, posing as a floor cleaning products salesman. Morris testified that he first met Holmes at Holmes' bar, the Ebony Club. He entered into a conversation with Holmes during which he mentioned that he "had run into a pretty good deal on food stamp coupons and . . . would let him have some if he wanted them." (Tr. 9). Holmes' response was that this "was the only way that he handled them, for fifty cents on the dollar, half price." (Tr. 9). After this initial conversation Morris left Holmes' bar, obtained the food stamps from a USDA agent and returned to the bar to sell them. Holmes paid Morris $25 in cash for two $65.00 coupon booklets, and promised to pay the rest later that evening. Holmes later paid Morris an additional $25 in cash, and allowed Morris to pay his bar tab with food stamps.

Morris testified that he met with Holmes again the next day, June 18, 1982. He produced several food stamp booklets and asked Holmes "how many would he handle." (Tr. 13). Holmes again offered 50 on the dollar. Holmes paid Morris $20 in cash and gave him a case of malt liquor in exchange for the food stamps, and agreed to pay an additional $15 later.

On June 21, 1982, Morris again contacted Holmes, providing him with sample floor cleaning products to maintain his cover. Holmes paid Morris the $15 he owed and purchased two more food stamp booklets. He again paid Morris $35 and agreed to pay another $15 later.

Morris contacted Holmes for the last time on July 9, 1982, when he again went to the Ebony Club. During their short conversation Holmes asked whether Morris had any more food stamps. Morris produced eight food coupon booklets and Holmes purchased two of them for $50, also paying Morris the additional $15 which he owed from June 21. Holmes expressed his intent to purchase more food stamps from Morris in the future.

Morris testified that Holmes never resisted the idea of purchasing the food stamps on any of the four occasions, and that he in fact appeared eager to buy them.

■■■ The question of entrapment is ordinarily one for the jury. *United States v. Quinn,* 543 F.2d 640 (8th Cir.1976). In order for us to conclude as a matter of law that entrapment occurred,

> the evidence must clearly have indicated that a government agent originated the criminal design; that the agent implanted in the mind of an innocent person the disposition to commit the offense, and that the defendant then committed the criminal act at the urging of the government agent.

*United States v. Shaw,* 570 F.2d 770, 772 (8th Cir.1978). *Accord, United States v. French,* 683 F.2d 1189, 1191–92 (8th Cir. 1982).

■■■ In determining whether there was entrapment and whether there was sufficient evidence to convict Holmes, we must view the evidence in the light most favorable to the government. *United States v. French; United States v. Brown,* 453 F.2d 101 (8th Cir.1971), *cert. denied* 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972). We conclude that there was ample evidence from which the jury could find Holmes was predisposed to purchase the food stamps, and that the government did not implant the idea in his mind. When Agent Morris mentioned the subject of an illegal food stamp transaction, Holmes without hesitation stated the terms on which he would buy the coupons. On one later occasion, it was Holmes himself who initiated the illegal transaction. There was no evidence that Agent Morris did anything other than offer Holmes the opportunity to commit a crime. This does not constitute entrapment. *United States v. French, supra.*

Affirmed.