**UNITED STATES of America, Appellee,**

v.

**Durwood Walker WOOSLEY, a/k/a Woody, Appellant.**

**No. 84–2209.**

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1985.

Decided April 11, 1985.

As Amended May 21, 1985.

---

James M. Pratt, Jr., Camden, Ark., for appellant.

Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before ROSS, ARNOLD and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Durwood Walker Woosley appeals from his conviction of causing the transportation of illegal aliens, in violation of 8 U.S.C. § 1324(a)(2) (1982) and 18 U.S.C. § 2(b) (1982). For reversal, Woosley argues that the District Court[1] improperly refused to admit into evidence a tape recording made by Woosley and a letter written by Woosley. Both items were offered to support Woosley's defense of entrapment. For the reasons outlined below, we affirm.

## I.

In March of 1984, agents of the border patrol recruited farm owner Franklin Stanley to place an order for illegal alien workers with Woosley. Within the week, Stanley placed three calls to Woosley which were recorded and received in evidence at trial. The first two conversations reflected Woosley's acceptance of Stanley's order for some "people" who would perform planting on Stanley's property. Woosley recruited fourteen aliens, at least three of whom were in the country illegally, to transport to Stanley's farm. Although Woosley originally intended to drive the aliens to Stanley's farm himself, an accident prevented him from doing so. Woosley persuaded Leonard Martinez to transport the aliens to Stanley's farm. Woosley told Martinez where to find the aliens, who were in hiding, and gave him a paper listing Stanley's name, phone number, and directions to Stanley's farm.

After Martinez left to deliver the aliens, Stanley made a third recorded call to Woosley to cancel the order, claiming he had been "busted." Because Martinez had already departed and could not be reached or stopped, Woosley asked Stanley to try to divert Martinez before he arrived at Stanley's farm. However, when Martinez arrived at Stanley's farm, he and the fourteen aliens were arrested.

Martinez pleaded guilty to one count of transporting illegal aliens and then testified for the government before the grand jury which indicted Woosley. Woosley wrote a letter to the grand-jury foreman and asked Martinez to deliver it. In the letter, Woosley claimed that the border patrol was harassing him and that he had planned to transport the aliens to Stanley's farm without charge in order to stop this harassment. Woosley also raised his defense of entrapment.[2] The letter was read in part to the grand jury which subsequently indicted Woosley. At trial, Woosley's attorney attempted to introduce the letter into evidence during his cross-examination of Martinez. The District Court refused to admit the contents of the letter into evidence.

Prior to trial Woosley met twice with his appointed attorney. When they met a third time on the day before the trial, Woosley gave his attorney a cassette tape recording of a conversation between Woosley and two unnamed border patrol agents (one of whom spoke in Spanish) who allegedly came to Woosley's home to entice him to transport illegal aliens. Woosley told his attorney that the recording was made in October of 1983, six months prior to the incident for which he was being tried. On the morning of the trial, Woosley's attorney advised the District Court of the existence of the tape and his intent to use it at trial. Woosley's attorney also requested a continuance for the purpose of having the tape transcribed and the unknown voices identified. The government objected, and the District Court determined that the tape could not be introduced.

---

**1.** The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas.

**2.** In the letter Woosley admitted that he had previously been convicted of a conspiracy to transport illegal aliens for which he had served 33 months in federal prison. The letter also recounted Woosley's problem with heart attacks and poor health.

The government's case against Woosley consisted of the testimony of Stanley, Martinez, and the border patrol agent who coordinated the operation, as well as depositions from three of the illegal aliens delivered to Stanley's farm by Martinez at Woosley's request. Woosley presented no evidence. The District Court's instructions to the jury included an instruction on the defense of entrapment. The jury found Woosley guilty on three counts of transporting illegal aliens. This appeal followed.

## II.

### A. *The Admissibility of the Tape.*

Woosley contends that the District Court erred in denying admission of the tape recording because the tape was relevant evidence in support of his defense of entrapment. The government contends the tape was properly excluded because: (1) it predated the events of the crime by six months; (2) it was "self-serving"; (3) aside from Woosley, the other individuals whose voices were taped were unidentified; and (4) Woosley offered no explanation for his failure to produce the tape in response to the government's discovery request until the day of trial.

■ We find no abuse of discretion here. Discovery matters are committed to the discretion of the trial court, and an error in administering the discovery rules will produce a reversal only on a showing that the error was prejudicial to the substantial rights of the defendant. *United States v. Roth*, 736 F.2d 1222, 1228 (8th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 541, 83 L.Ed.2d 433 (1984); *United States v. Pelton*, 578 F.2d 701, 707 (8th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978). If a party fails to comply with Fed.R.Crim.P. 16, which addresses discovery, the District Court may, *inter alia*, "prohibit the party from introducing evidence not disclosed...." Rule 16(d)(2). Here Woosley's response to the government's motion for disclosure of evidence did not include or mention the tape

recording as evidence he intended to introduce at trial, as required by Rule 16.

■ Moreover, Woosley failed to demonstrate that the exclusion of the tape substantially prejudiced his right to present his entrapment defense or his right to a fair trial. Entrapment is an affirmative defense consisting of two elements: first, that the government agents induced the defendant to commit the particular acts charged, and second, that the defendant was not otherwise predisposed to commit the crime on any propitious opportunity. *Holmes v. United States*, 709 F.2d 19, 20 (8th Cir.1983) (per curiam); *United States v. Glassel*, 488 F.2d 143, 146 (9th Cir.1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). "Once these two elements are in issue, the government has the burden of showing beyond a reasonable doubt that entrapment did not exist." *Glassel, supra*, 488 F.2d at 146 (citation omitted).

Even assuming that the tape demonstrated that Woosley was being harassed or enticed by border patrol agents to transport illegal aliens, he failed to connect that incident to the present charge. Moreover, even if the tape had established that the border patrol induced Woosley to commit the crime alleged there is no evidence demonstrating that he was not otherwise predisposed to commit the offense. In light of the overwhelming evidence against him, Woosley failed to demonstrate that the denial of the admission of the tape substantially prejudiced his right to a fair trial.

■ The district court has broad discretion in determining the relevance and admissibility of evidence. *Smith v. Firestone Tire and Rubber Co.*, 755 F.2d 129, 134 (8th Cir.1985). "Absent a clear showing of an abuse of discretion, a district court's determination regarding the inadmissibility of certain evidence will not be disturbed on appeal." *Id.* at 134. In support of its decision to prohibit introduction of the tape, the District Court noted that the conversation on the tape was not timely, that the identity of the parties was unknown, and that no opportunity to determine who

they were existed.[3] In light of these problems, we cannot say that the District Court abused its discretion in prohibiting Woosley from introducing the tape into evidence.[4]

### B. *The Admissibility of the Letter.*

Woosley's second contention is that the District Court erred in refusing to admit the letter written by Woosley to the grand jury which indicted him. At trial, Woosley's attorney tried to introduce the letter during the cross-examination of Martinez, because Martinez had read the letter and delivered it to the grand jury. However, the District Court refused to allow the admission of the contents of the letter through Martinez.

The district court has considerable discretion in admitting evidence of acts of subsequent conduct of a defendant offered to prove the absence of evil intent. *Brown v. United States,* 283 F.2d 792, 796 (8th Cir.1960). Further, no abuse of discretion lies in a district court's refusal to admit evidence of self-serving statements of innocence made by the defendant after the offense was discovered. *United States v. Anderson,* 577 F.2d 258, 261 (5th Cir. 1978); *United States v. Sparrow,* 470 F.2d 885, 890 (10th Cir.1972), *cert. denied,* 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 397 (1973). Such evidence lacks the required indicia of trustworthiness and reliability which support the admission of hearsay under exceptions[5] to the hearsay rule. See *United States v. DeLuca,* 692 F.2d 1277, 1285 (9th Cir.1982); *Huff v. White Motor Corp.,* 609 F.2d 286, 292 (7th Cir.1979). Because the letter was written after the crime was committed, and contained protestations of Woosley's innocence and entrapment by the border patrol, it was clearly lacking in trustworthiness and reliability.

Accordingly, the District Court properly excluded the letter from evidence. Woosley could of course have taken the stand and testified to the same facts that he sought to prove by the letter. He chose not to do so.

For the reasons set forth above, the decision of the District Court is affirmed.

---

**3.** In his brief, Woosley refers to the other individuals as "unknown" agents of the border patrol, indicating that even Woosley could not identify them.

**4.** Because the tape was inadmissible, the District Court also properly denied Woosley's motion for a continuance to allow time to transcribe the tape.

**5.** The only hearsay exception into which this letter might possibly fit is the general exception for statements not fitting any traditional exception but nevertheless containing sufficient indicia of reliability, Fed.R.Evid. 803(24). However, the letter fails to satisfy the requirements for admission under this exception. See *Huff v. White Motor Corp.,* 609 F.2d 286, 294 (7th Cir. 1979).