768 F.2d 263
 18 Fed. R. Evid. Serv. 1250
 UNITED STATES of America, Appellee,
v.
Juan Cabada ARENAL, a/k/a David Omera, a/k/a Cansio, Appellant.
UNITED STATES of America, Appellee,
v.
Pablo DIAZ, Appellant.
UNITED STATES of America, Appellee,
v.
Rene CORDERO, Appellant.
UNITED STATES of America, Appellee,
v.
Daniel Rogelio GONZALES, Appellant.
 Nos. 84-5137 to 84-5140.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 11, 1985.
Decided July 18, 1985.
 
 James R. Koby, LaCrosse, Wis., Scott F. Tilsen, Minneapolis, Minn., Mark W. Malzahn, Anoka, Minn., for appellant.
 Daniel W. Schermer, Asst. U.S. Atty., Minneapolis, Minn., for appellee.
 Before HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, and ARNOLD, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 In these consolidated drug cases, Juan Cabada Arenal, Rene Pena Cordero, Pablo Diaz, and Daniel Rogelio Gonzales appeal from their convictions for violations of 21 U.S.C. Sec. 841(a)(1). Appellant Cordero was also convicted on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. Arenal, Diaz, and Gonzales entered conditional guilty pleas under Fed.R.Crim.P. 11(a)(2), reserving the right to appeal from adverse rulings on pretrial motions for severance and for suppression of evidence. Cordero pleaded not guilty and was convicted following a jury trial. For reversal, Cordero contends that the district court[1] erred in (1) denying his motion for a bill of particulars, and (2) permitting certain improper expert testimony concerning the existence of a conspiracy. We reverse Cordero's conviction on the conspiracy count, and affirm the district court with respect to all other issues on appeal.
 
 
 2
 I. BACKGROUND.
 
 
 3
 On January 6, 1984, Sergeant Ronald Johnson of the Minneapolis Police Department obtained a warrant to search an apartment at 2640 Second Avenue South, Minneapolis, based on information supplied by a "confidential reliable informant." Johnson executed the warrant and found forty-seven grams of cocaine wrapped in packages and priced for sale. All of the cocaine was cut with Inositol. Appellant Cordero, who was in the apartment at the time of the search, was arrested for possession of cocaine.
 
 
 4
 On January 13 and 14, 1984, Sergeant Johnson obtained and executed four additional search warrants based on information supplied by the same "confidential reliable informant."[2] The searches resulted in the arrests of appellants Diaz, Gonzales, and Arenal for possession of cocaine. All of the cocaine seized from various locations was cut with Inositol.
 
 
 5
 A federal grand jury returned a twelve-count superseding indictment against the appellants and two other individuals, charging all six with conspiring to distribute cocaine in violation of 21 U.S.C. Sec. 846. The four appellants were also charged with substantive counts of distributing cocaine or possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1).
 
 
 6
 Diaz, Gonzales, and Arenal filed motions to suppress evidence seized in the searches and to sever trials. Following a pretrial hearing before a magistrate, the district court adopted the magistrate's report and recommendation and denied the motions. Thereafter, Diaz, Gonzales, and Arenal entered conditional guilty pleas pursuant to Fed.R.Crim.P. 11(a)(2), specifically reserving the right to appeal the district court's adverse determinations on their severance and suppression motions.
 
 
 7
 Cordero pleaded not guilty, and stood trial on three substantive counts of possession of cocaine with intent to distribute and one count of conspiracy. A jury convicted him on the conspiracy count and one of the substantive counts, and acquitted him on the remaining counts. This appeal followed.
 
 
 8
 II. DISCUSSION.
 
 
 9
 A. Arenal, Diaz, and Gonzales.
 
 
 10
 1. Validity of the search warrants.
 
 
 11
 Appellants first challenge the denial of their motions to suppress evidence seized in the searches, arguing that, because of alleged deficiencies in the warrants and supporting affidavits, police obtained the evidence in violation of their fourth amendment rights. According to appellants, the affidavits[3] failed to establish probable cause because they referred to information supplied by a "confidential reliable informant," but did not adequately demonstrate the informant's underlying reliability or the basis of his knowledge. Appellants also contend, among other things, that the affidavits lacked independent corroboration of the informant's allegations, and that alterations on the face of some of the documents invalidated the warrants.
 
 
 12
 Under the standard established in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the task of a magistrate issuing a search warrant is to determine whether, in light of all the circumstances set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Id. at 238-39, 103 S.Ct. at 2332 (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Courts are to interpret affidavits in a nontechnical, common-sense fashion, and the magistrate's determination of probable cause is entitled to great deference. See, e.g., Gates, 462 U.S. at 236, 103 S.Ct. at 2331; United States v. Little, 735 F.2d 1049, 1055 (8th Cir.), modified on other grounds sub nom. United States v. Sager, 743 F.2d 1261 (8th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985).
 
 
 13
 Applying the Gates "totality of the circumstances" analysis to the present case, we agree with the district court that the state court judges[4] had a substantial basis for concluding that probable cause existed for issuing the warrants. The affidavits contained explicit details concerning the appellants' alleged drug-related activities, along with statements about the informant's firsthand observation of Diaz and Gonzales in possession of weapons and Arenal selling cocaine. The affidavits also established the informant's reliability by detailing the accuracy of information he provided in connection with the January 6, 1984 search leading to Cordero's arrest.
 
 
 14
 In addition, Sergeant Johnson corroborated some of the information provided by the informant through independent investigation. Appellants argue that Johnson verified only "innocent details," such as addresses, phone numbers, the registration of an automobile, and Arenal's use of certain aliases. However, "completely innocent activity can provide sufficient corroboration in some circumstances." Little, 735 F.2d at 1055. See also Gates, 462 U.S. at 243-44 n. 13, 103 S.Ct. at 2335 n. 13. In light of all the information before the issuing judges, we conclude that the affidavits in question provided a sufficient basis for crediting the hearsay. See United States v. Robinson, 756 F.2d 56, 59-60 (8th Cir.1985); United States v. Thompson, 751 F.2d 300, 302 (8th Cir.1985).
 
 
 15
 Appellants' other allegations concerning the validity of the warrants are also without merit. Specifically, we note appellants' claim that alterations on the face of some of the documents rendered three of the warrants invalid. The challenged alterations involve the address of one of the apartments searched, 3028 Third Avenue South, which in several places was mistakenly typed as "3208" Third Avenue South. In each instance, Johnson corrected the error and initialed the change. The address was correctly typed in a number of places on the various documents, and no doubt exists about which location was to be searched. We agree with the district court that these obvious typographical errors did not render any of the warrants invalid. Although the documents on which the error appears include the application and warrant to search the Third Avenue address, Johnson called a state district court judge prior to executing the warrant and informed him of the mistakes. The judge told Johnson to correct the address and execute the warrant. The judge later initialed the address changes. A police officer is not "required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." Massachusetts v. Sheppard, --- U.S. ----, 104 S.Ct. 3424, 3429, 82 L.Ed.2d 737 (1984). Nor was the warrant so facially deficient that Johnson could not reasonably have presumed it to be valid. See United States v. Leon, --- U.S. ----, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). The evidence seized pursuant to the warrants was therefore admissible.
 
 
 16
 2. Severance.
 
 
 17
 Appellants next contend that the district court's denial of their motions to sever trials deprived them of their right to a fair trial. They argue that the evidence against each of them individually was insufficient to convict, and that, in a joint trial, evidence introduced against other defendants would have spilled over against them, allowing the Government to obtain a "bootstrap" conviction. Appellants also suggest that severance was warranted because they would have raised inconsistent or antagonistic defenses, and because open hostility existed among them.
 
 
 18
 Generally, persons charged in a conspiracy should be tried together, especially where proof of the charges against the defendants is based upon the same evidence and acts. See, e.g., United States v. Lee, 743 F.2d 1240, 1248 (8th Cir.1984); United States v. Krevsky, 741 F.2d 1090, 1094 (8th Cir.1984). Motions to sever rest in the sound discretion of the trial court, and the denial of such motions is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. See, e.g., United States v. Miller, 725 F.2d 462, 467 (8th Cir.1984); United States v. Jackson, 549 F.2d 517, 523 (8th Cir.), cert. denied, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977).
 
 
 19
 In this instance, the record before the court does not support a finding of clear prejudice from denial of the motions to sever. Appellants have not shown the existence of circumstances mandating severance. None of the appellants has asserted, for example, that a co-defendant would offer exculpatory evidence on his behalf in the event of a separate trial. See, e.g., United States v. Reed, 733 F.2d 492, 508 (8th Cir.1984); Jackson, 549 F.2d at 524-25. Moreover, because appellants entered conditional guilty pleas, they do not have the benefit of a full trial record as a basis for demonstrating that a joint trial actually prejudiced their right to a fair trial. See id. Cf. United States v. Bulgatz, 693 F.2d 728, 732 (8th Cir.1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 444 (1983); United States v. Knife, 592 F.2d 472, 480 (8th Cir.1979). Nor are any of appellants' assertions of prejudice sufficient to support reversal of the district court's ruling. Appellants must do more than merely show that separate trials would enhance their chances for acquittal. See, e.g., Lee, 743 F.2d at 1248; Reed, 733 F.2d at 508. Furthermore, this court has held that defendants are not entitled to severance just because the evidence against a codefendant is more damaging than the evidence against them, Jackson, 549 F.2d at 525, or because they would have had antagonistic trial strategies and were hostile to one another. See, e.g., United States v. Davis, 747 F.2d 440, 443 (8th Cir.1984); Miller, 725 F.2d at 468; United States v. Boyd, 610 F.2d 521, 526 (8th Cir.1979), cert. denied, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). Appellants' claims are thus without merit.
 
 
 20
 B. Cordero.
 
 
 21
 1. Bill of Particulars.
 
 
 22
 The superseding indictment returned in this case named Rene Cordero in three substantive counts of possession with intent to distribute as well as in the conspiracy count. Cordero filed a pretrial motion for a bill of particulars seeking more definite information about the substantive counts. With respect to Count VII, the only substantive count on which the jury convicted him, Cordero requested the city and address where the alleged possession of cocaine took place, and whether the Government claimed that he had acted as a principal or as an aider and abettor.[5] The district court denied the motion. Cordero contends that the district court erred in denying his request because the wording of Count VII was so vague and the testimony on this count was so confused that he had no means of avoiding surprise at trial, nor was it clear on what basis the jury convicted him.
 
 
 23
 "The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him, and to prevent or minimize the element of surprise at trial." United States v. Miller, 543 F.2d 1221, 1224 (8th Cir.1976), cert. denied, 429 U.S. 1108, 97 S.Ct. 1142, 51 L.Ed.2d 561 (1977). The granting or denying of a bill of particulars lies within the broad discretion of the trial court. See, e.g., United States v. Key, 717 F.2d 1206, 1210 (8th Cir.1983); United States v. Little, 562 F.2d 578, 581 (8th Cir.1977). To establish reversible error from the denial of his motion, Cordero must show that he was "actually surprised at trial and thus incurred prejudice to his substantial rights by the denial." United States v. Diecidue, 603 F.2d 535, 563 (5th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980). See also United States v. Hill, 589 F.2d 1344, 1352 (8th Cir.), cert. denied, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979).
 
 
 24
 In the present case, we agree that the wording of Count VII was vague, particularly with respect to the place of the alleged criminal act. But even assuming that the district court should have granted the bill of particulars, Cordero has failed to demonstrate actual surprise or prejudice resulting from the denial of his request. Cordero was arrested on January 6, 1984, in possession of cocaine at 2640 Second Avenue South, Minneapolis. He acknowledges that the parties tried the case as though Count VII alleged possession on January 6, and that he pleaded guilty to that same offense in state court. Despite his general allegations of confusion and surprise, Cordero has not shown, nor does the record reflect, in what way the Government's failure to provide the requested information actually impaired his defense or prejudiced his right to a fair trial. In the circumstances, we cannot say that the district court's ruling constitutes reversible error.
 
 
 25
 2. Expert Testimony.
 
 
 26
 Cordero contends that the district court erred in permitting certain testimony by Sergeant Johnson concerning the inference to be drawn from the fact that all the cocaine seized in the various searches was cut only with Inositol.[6] Johnson stated on both direct and cross-examination that Inositol is a substance commonly used to cut cocaine. He indicated, however, that at the street level, cocaine generally contains several cutting agents, and it is unusual to see small quantities of cocaine from the different locations all cut with Inositol and nothing else. On redirect examination, the prosecutor again elicited the same information from Johnson, and then asked what significance Johnson attached to finding cocaine with a common cut at the various locations. The trial judge sustained defense counsel's objections to several versions of this question, but the prosecutor persisted, and eventually the court permitted essentially the same inquiry. Johnson responded, "it would be a common source. * * * It would seem there was a common source."
 
 
 27
 Cordero contends that Johnson's statements concerning the cocaine's common source were not an appropriate subject for expert testimony and improperly invaded the province of the jury. We agree. "Fed.R.Evid. 702 permits a qualified expert to testify in the form of an opinion if the witness' specialized knowledge would assist the jury to understand the evidence or decide a fact in issue." Zimmer v. Miller Trucking Co., Inc., 743 F.2d 601, 604 (8th Cir.1984). Fed.R.Evid. 704 provides that expert opinion evidence is not objectionable simply "because it embraces an ultimate issue to be decided by the trier of fact," in this instance, whether a conspiracy existed among the defendants. However, Rule 704 does not render all expert testimony admissible. Such testimony is still subject to exclusion if the subject matter is within the knowledge or experience of the jury, because the testimony does not then meet the helpfulness criterion of Rule 702. See United States v. Scavo, 593 F.2d 837, 844 (8th Cir.1984). See also Zimmer v. Miller Trucking Co., Inc., 743 F.2d at 604; United States v. Ellsworth, 738 F.2d 333, 336 (8th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 528, 83 L.Ed.2d 415 (1984). In the present case, once Johnson had testified--albeit in rather general terms--that cocaine at the street level normally has more than one cut, and that it is unusual to find cocaine at several locations cut only with Inositol, the jury was competent to draw its own conclusion about the existence of a relationship among the alleged co-conspirators. After carefully reviewing the record, we hold that the district court abused its discretion in permitting the challenged testimony, and that, especially in light of Sergeant Johnson's aura of expertise, admission of the evidence was prejudicial to Cordero on the conspiracy issue. We therefore reverse Cordero's conviction on the conspiracy count.
 
 
 28
 III. CONCLUSION.
 
 
 29
 We affirm the district court's rulings with respect to appellants Arenal, Diaz, and Gonzales. We reverse Cordero's conviction on the conspiracy count and affirm his conviction on the substantive count of possession with intent to distribute. Cordero was sentenced to concurrent terms of three years each on the conspiracy count and the substantive count, together with a four-year special parole term. We remand this matter to the district court for entry of a corrected judgment consistent with this opinion.
 
 
 30
 ARNOLD, Circuit Judge, concurring in part and dissenting in part.
 
 
 31
 I join the Court's opinion except for its reversal of Cordero's conspiracy conviction, as to which I respectfully dissent.
 
 
 32
 As the Court notes, Sergeant Johnson has worked in the Narcotics Division of the Minneapolis Police Department for 17 years, and his qualifications to testify as an expert about controlled substances and narcotics activities are not challenged. Ante, at 269 n. 6. He testified--and to this portion of his testimony there is no objection--that "it is unusual to see small quantities of cocaine from ... different locations all cut with Inositol and nothing else." Id. at 269. On redirect, he amplified this testimony only by saying that, in view of the rarity of the circumstances presented with respect to the cutting agent, "it would seem there was a common source." The admission of this latter item of evidence causes the Court to reverse Cordero's conspiracy conviction.
 
 
 33
 I cannot agree either that the District Court abused its discretion in permitting this testimony, or that the testimony damaged Cordero's case in any material way beyond the damage he had already sustained from Johnson's testimony on direct. These sorts of issues are uniquely suited to weighing by the district judge, who is on the scene, sees the witnesses, and is immersed in the factual details of the case. What Sergeant Johnson added on redirect was no more than an inference based on common sense and if, as the Court says, the jury could have drawn its own conclusion, what harm is there in allowing the Sergeant to say out loud what may already have been evident to everyone in the courtroom? Admittedly the question is one of judgment and degree, but it is in precisely such situations that we ought to defer to the district courts. Whatever additional weight might have attached to the inference that a relationship among the alleged co-conspirators existed because this inference was made explicit by Sergeant Johnson on redirect examination, does not seem to me sufficient to justify the conclusion that Cordero was unfairly prejudiced.
 
 
 34
 In short, I would affirm these convictions in their entirety.
 
 
 
 [1]
 The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota
 
 
 [2]
 Johnson obtained warrants to search the persons of Gonzales, Diaz, and Arenal, two apartments used by Diaz and Gonzales, Arenal's apartment, a 1979 Lincoln Continental used by Diaz and Gonzales, and a Cadillac used by Arenal
 
 
 [3]
 The affidavits supporting the four warrants issued on January 13 and 14, 1984, contain substantially the same information
 
 
 [4]
 Three different state district court judges signed the challenged search warrants
 
 
 [5]
 Count VII of the indictment states:
 That on or about January 4, 1984, in the State and District of Minnesota, the defendants,
 RENE PENA CORDERO
 and
 REINA RODRIGUEZ
 each aiding the other, knowingly and intentionally did unlawfully possess with intent to distribute approximately ten ounces of Cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.
 
 
 [6]
 Johnson has worked in the Narcotics Division of the Minneapolis Police Department for seventeen years, and Cordero does not challenge his qualifications to testify as an expert about controlled substances and narcotics activities. Cf. United States v. Franklin, 728 F.2d 994, 998 n. 8 (8th Cir.1984)