UNITED STATES of America, Appellee,

v.

Terry Jon MARTIN, Appellant.

UNITED STATES of America, Appellee,

v.

John David EMERSON, Appellant.

Nos. 87–5529, 87–5530.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 20, 1988.

Decided Jan. 18, 1989.

James Duffy O'Connor, Minneapolis, Minn., for Martin.

Trygve A. Egge, Arden Hills, Minn., for Emerson.

Henry J. Shea, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

* The Honorable Gerald W. Heaney assumed senior status on January 1, 1989.

1. The Honorable Paul A. Magnuson, United States District Judge, District of Minnesota.

2. Counts I and II charged respectively that both defendants unlawfully entered a drug store with the intent to steal controlled substances having a replacement value in excess of $500.00, in violation of 18 U.S.C. § 2118(b), and that both

Before HEANEY * and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

In these consolidated appeals, Terry Jon Martin and John David Emerson challenge the final judgments entered by the district court[1] upon jury verdicts finding both appellants guilty of conspiracy, burglary of a federally registered pharmacy, and possession with intent to distribute Ritalin. For reversal, Martin contends that the district court erred in refusing to suppress evidence obtained as the result of the allegedly improper search of his automobile. Emerson argues that (1) the district court abused its discretion by permitting the government to cross examine his wife concerning his prior criminal record; (2) he is entitled to an acquittal on Counts I and II of the indictment[2] because the drug store concerning which he allegedly committed burglary is not a "person" within the meaning of 18 U.S.C. § 2118(b); (3) the district court erred in denying his motion to suppress evidence seized from his home; (4) the district court erred in denying his motion for severance; (5) the district court erred in admitting the hearsay testimony of a coconspirator; (6) the district court erroneously refused to submit a requested instruction concerning the drug addiction of an informant; and (7) the evidence is insufficient to establish his guilt. For the reasons set forth herein, we conclude that each of these assignments of error is without merit, and we affirm.

I.

According to the testimony of Fred King, a police informant, Martin and Emerson committed burglary of a drug store in New

defendants conspired to commit the offense described in Count I, in violation of 18 U.S.C. § 2118(d). Count III charged that both defendants conspired to unlawfully distribute controlled substances, in violation of 21 U.S.C. § 846, and Count IV charged that Martin unlawfully possessed controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Hope, Minnesota, on May 16, 1987, and took approximately $950.00 worth of codeine, Ritalin and other controlled substances. King's testimony was corroborated by the identification testimony of an employee of the drug store who observed Martin and Emerson "casing" the store the day before the burglary. In addition, on May 20, 1987, at approximately 1:00 a.m., Chief of Police Kelly Shannon of Frazee, Minnesota stopped a car after observing the driver leave the vehicle, walk up to the front door of a drug store, and apparently investigate the lock. Martin was later identified as the driver, and Emerson as a passenger. Shannon observed that Martin was wearing a booster coat (a coat with compartments in its lining, often used in burglaries and thefts) and, after Martin consented to a search of the trunk of the vehicle, Shannon observed a four-foot railroad bar, pry pliers, drills and other tools. A buck knife and large screwdriver were also observed under the front seat. Shortly after Shannon permitted the vehicle to depart, he learned via radio that the car bore the registration sticker of another vehicle. Although he decided to stop the car, he was unable to catch it.

Thereafter, on May 22, 1987, Detective Walter Powers of the Hennepin County Sheriff's Department applied for a search warrant for Martin and his car. In his application, Powers indicated that on May 19, 1987 the manager of a truck stop reported that a man wearing a blue booster coat and driving a car with a license plate registered to Martin attempted to steal several T-shirts. In addition, Powers included Shannon's statement that he believed Martin and Emerson were "casing" a drug store in Frazee, and indicated that Martin had a criminal record, including burglary and robbery convictions. The warrant was approved by a state judge, and authorized a search for:

> Burglary tools, including but not limited to, crowbars and vice grips. A booster coat described as being a dark blue parka with a red and black lining. Items to

show constructive possession of the vehicle.

The warrant was executed later that day, and a number of items were seized from Martin's car including the booster coat, numerous tools, and a bag of pills and a lock pick found in the arm rest under the rear passenger side ashtray. Martin was arrested shortly thereafter. On May 28, 1987 Powers applied for a warrant to search Emerson's home, listing in the application the same information submitted in conjunction with the request to search Martin's car, and extensive information revealed by King. The warrant was executed, several items were seized, and Emerson was placed under arrest.

Martin and Emerson were indicted June 17, 1987. Adopting the recommendation of the magistrate[3] to whom the matter had been referred for an evidentiary hearing, the district court denied both defendants' motions to suppress. The court also denied Emerson's motion for severance and various additional pretrial motions, and the matter proceeded to trial. The defendants' post-trial motions were denied, and this appeal followed.

II.

*A. Martin's Appeal.*

*1. Probable Cause.* Martin first argues that the warrant authorizing the search of his automobile was not based upon probable cause because (1) the information recited in Powers's affidavit was insufficient to establish probable cause to believe that the automobile contained tools which Martin intended to use to commit a burglary; (2) the affidavit incorporated conclusions concerning Martin's activities in Frazee rather than presenting only facts; and (3) there was no probable cause to believe the booster coat would still be in the vehicle at the time of the search.

In rejecting Martin's probable cause argument, the district court concluded that "The two-page affidavit clearly states circumstances supporting a fair probability that contraband and evidence of a crime

---

**3.** The Honorable Floyd E. Boline, United States Magistrate, District of Minnesota.

would be found in ... Martin's Cadillac." In addition, the court determined that it was reasonable to believe the booster coat would be in the car because Martin had been wearing it two days prior to the issuance of the warrant and Officer Shannon had observed other items of clothing in the vehicle when he stopped it in Frazee.

The principles governing our consideration of Martin's claim are well established. The sufficiency of a search warrant is determined in the first instance upon the basis of the information presented to the issuing official. *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir.1986). A judicial officer who has been called upon to issue a search warrant must determine whether, "in light of all the circumstances set forth in the affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Arenal*, 768 F.2d 263, 266 (8th Cir.1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed. 2d 527 (1983)). An appellate court reviewing a decision to issue a search warrant need only ensure that the issuing official had a substantial basis to conclude that probable cause existed. *Illinois v. Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332–33.

Probable cause in this context is said to exist "when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place." *Reivich*, 793 F.2d at 959. In determining whether probable cause has been demonstrated, courts are instructed "to interpret affidavits in a nontechnical, common-sense fashion...." *Arenal*, 768 F.2d at 266; *accord United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir.1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983). It is settled law that an issuing official's determination of probable cause is entitled to considerable deference, *United States v. Ellison*, 793 F.2d 942, 946 (8th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986), and that a district court's ruling on a motion to suppress will be affirmed unless it is clearly erroneous. *United States v. Pillow*, 842 F.2d 1001, 1004 (8th Cir.1988).

■ Juxtaposing these principles to the case at hand, we conclude that the district court properly determined that the issuing magistrate had probable cause for authorizing the search of Martin's vehicle for both the burglary tools and the booster coat. Powers's affidavit contained information indicating that on May 19, 1987 Martin was identified as the individual involved in an attempted theft; that Powers had prior contact with Martin and had previously charged him with receiving or concealing stolen property; that on May 2, 1987 Police Chief Shannon had observed Martin and two other individuals outside the drug store in Frazee and "suspected [them] of casing the drug store with the intent of committing a burglary"; that Shannon noticed Martin was wearing a booster coat, which Martin was identified as wearing during the attempted theft and which Martin had allegedly worn during various other encounters with Powers; that Shannon observed several crow bars, vice grip pliers and other tools in Martin's car; and that Martin had a prior criminal record including convictions for burglary and robbery.

■ We believe that the reasonable inferences drawn from these allegations and from the surrounding circumstances, *see Leichtling*, 684 F.2d at 556, establish the requisite probability of criminal activity and the likelihood that evidence of a crime, namely burglary tools and Martin's booster coat, would be found in Martin's vehicle. *See id.; United States v. Smith*, 462 F.2d 456, 460 (8th Cir.1972) ("The affidavit need only establish the *probability* of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt." (emphasis in original)). Although Martin argues that Powers's affidavit was impermissibly conclusory in setting forth Shannon's belief that Martin and Emerson were casing the drug store in Frazee, we find this contention unpersuasive. The paragraph of the affidavit expressing Shannon's suspicion also recited crucial facts (including the time and the fact that Martin was wearing his booster coat) from

which the issuing magistrate could adjudge Martin's behavior. We agree that ideally the affidavit would have included a greater number of specific details; as we have previously observed, however, "affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.'" *United States v. Doty*, 714 F.2d 761, 763–64 (8th Cir.1983) (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).

■ At this juncture, we also dispose of Martin's contention that there was no probable cause to believe the booster coat would be found in the car at the time the warrant was executed. In the unique circumstances of this case, it was entirely reasonable to assume that the coat would be kept in the vehicle since the coat itself was a "tool of the trade" and other burglary tools had been observed in the car. *See United States v. Reyes*, 798 F.2d 380, 382 (10th Cir.1986) (timeliness of a search depends upon the underlying circumstances). Likewise, Martin and Emerson's behavior outside the drug store in Frazee indicated that they were operating out of the vehicle. In these circumstances, we believe there clearly existed a fair probability that the coat would be found in the vehicle.

*2. Particularity.* Martin also argues that in authorizing a search for "burglary tools, including *but not limited to* crow bars and vice grips," and "items to show constructive possession of the vehicle," the warrant was insufficiently particular. The particularity requirement of the fourth amendment mandates that a search warrant "describe the things to be taken and the place to be searched with particularity such that it provides a guide to the exercise of informed discretion of the officer executing the warrant." *United States v. LeBron*, 729 F.2d 533, 536 (8th Cir.1984). This requirement circumscribes the scope of a search and protects individuals from "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct.

2022, 2038, 29 L.Ed.2d 564 (1971). The requisite degree of specificity is flexible, however, depending upon the circumstances. *United States v. Kail*, 804 F.2d 441, 445 (8th Cir.1986). Thus, a description is generally valid "if it is as specific as the circumstances and nature of activity under investigation permit." *Id.* (quoted case omitted).

■ Applying these standards, we find no merit to Martin's contention that the search warrant was insufficiently particular. The description of "burglary tools, including but not limited to crow bars and vice grips" was as specific as the investigation could at that point permit, and sufficed to limit the search to the generic class of items sought. *See United States v. Johnson*, 541 F.2d 1311, 1314 (8th Cir.1976) ("Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice...."). Nor do we find fatal the breadth of the phrase "items to show constructive possession of the vehicle." As indicated, the registration sticker on Martin's car did not fit the automobile; in these circumstances, it was entirely reasonable for the police to seek evidence of constructive possession in order to connect Martin with the car. Given the relevance of this evidence to the overall investigation, this portion of the warrant cannot be said to have authorized the police to rummage indiscriminately through Martin's possessions. *See Milliman v. Minnesota*, 774 F.2d 247, 249–50 (8th Cir.1985) (upholding a warrant authorizing a search "including but not limited to" records and other writings tending "to show the presence of [the defendant]....").

For the above reasons, we find *LeBron*, 729 F.2d 533, upon which Martin places primary reliance, distinguishable. In *LeBron*, this court invalidated a warrant authorizing a search for "any records which would document illegal transactions involving stolen property." *Id.* at 536, 539. In finding this phrase insufficiently particular, the court in *LeBron* stressed both that the description failed to particularize the items to be seized and lacked an explanation of

the method by which the police could distinguish records relating to illegal or legal transactions. In addition, the court noted that there was nothing in either the affidavit or the warrant substantiating the contention that the records mentioned in the warrant were kept in LeBron's home. *Id.* at 539. The same concerns are not implicated here. Both descriptions at issue in the present case were directed toward items likely to provide information concerning Martin's suspected involvement in criminal activity, and as such did not authorize the police to seize more than what was reasonable in the circumstances.

In summary, we hold that Martin's probable cause and particularity claims are without merit and conclude that the warrant authorizing the search of Martin's vehicle satisfied the applicable constitutional requirements. Hence, the district court committed no error in refusing to grant Martin's motion to suppress.

### B. Emerson's Appeal.

*1. Cross–Examination of Emerson's Wife.* At trial Emerson's wife testified on her husband's behalf as an alibi witness. During Mrs. Emerson's cross-examination, the prosecution inquired concerning her knowledge of her husband's prior criminal charges and convictions, and made reference to Emerson's conviction in 1981 for the robbery of a drug store in Wisconsin. Emerson's attorney objected after the prosecutor's initial question in this connection, and the objection was overruled. As the prosecution pursued its line of questioning, Emerson's attorney lodged additional objections which the district court sustained. In addition, Emerson's attorney requested, and the district court submitted, an instruction advising the jury to disregard Mrs. Emerson's testimony concerning her husband and "some events in Wisconsin." Emerson argues on appeal that the district court abused its discretion by permitting any inquiry into the 1981 conviction because this line of questioning exceeded the scope of the witness's direct examination.

■■■ A district court has broad discretion concerning the permissible scope of cross-examination. *United States v. Drake*, 542 F.2d 1020, 1022 (8th Cir.1976), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977). We find no abuse of this discretion here. The district court permitted the initial inquiry into Mrs. Emerson's knowledge of her husband's criminal record in order to permit the prosecution to "make the tie up" in an attempt to rebut the witness's direct testimony. As the prosecution's questions continued without making the requisite connection, the court sustained Emerson's objections, and as indicated eventually submitted an instruction informing the jury to disregard the testimony. In these circumstances, we conclude that no error occurred; the district court disallowed the prosecutor's line of inquiry when it began to stray extensively from the testimony elicited on direct examination. Of equal significance, it may be said that our review of the record persuades us that any potential error was merely harmless. The prosecution presented unchallenged evidence concerning Emerson's criminal record during its case-in-chief, thus rendering the testimony in question largely cumulative, and diminishing the likelihood of any potential prejudice. *See United States v. Davis*, 551 F.2d 233, 235 (8th Cir.), *cert. denied*, 431 U.S. 923, 97 S.Ct. 2197, 53 L.Ed.2d 237 (1977).

■■■ *2. "Person" Registered with the Drug Enforcement Administration.* Emerson next argues that he is entitled to an acquittal on Counts I and II because the drug store in New Hope is not a "person" within the meaning of 18 U.S.C. § 2118(b). We disagree. 1 U.S.C. § 1 provides "In determining the meaning of any Act of Congress, unless the context indicates otherwise ... the word[ ] person ... include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals...." In addition, the legislative history of § 2118 reflects that the word "person" as used in the Act is intended to include enterprises which dispense controlled substances. *See* H.R.Rep. No. 98–644, 98th Cong., 2d Sess. 5, *reprinted in*

1984 U.S.Code Cong. & Admin.News 521, 525.

■ *3. Motion to Suppress.* In challenging the denial of his motion to suppress evidence seized from his home and car, Emerson first argues that the failure of the detective securing the search warrant to reveal to the issuing judge that the information in the affidavit was provided by an addict-informant involved in criminal activity renders the warrant deficient under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We disagree. As noted by the district court, the affidavit contains facts clearly indicating that the informant, King, was an accomplice in the casing of the drug store in New Hope. Although Emerson correctly notes that King's history as an addict was omitted from the affidavit, we have previously recognized that "omissions of facts are not misrepresentations unless they cast doubt upon the existence of probable cause." *United States v. Parker,* 836 F.2d 1080, 1083 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988). In light of the extensive information set forth in the affidavit, we believe it beyond peradventure that the omission of facts concerning King's drug addiction was of no consequence to the determination of probable cause.

■ Emerson also argues that the seizure of his police scanner and address book was improper because the search warrant authorized a search for drugs and drug paraphernalia, and thus did not authorize the seizure of the items at issue. In refusing to grant Emerson's motion to suppress these items, the district court concluded that the address book fell within the purview of the warrant because it contained "the names, addresses or phone numbers of possible sources or customers." Similarly, the district court held that the scanner should not be suppressed because it was "discovered during the execution of a valid search warrant and reasonably constitutes evidence of a crime." We find no error in either of these determinations. We agree that both the scanner and the address book are sufficiently related to the crime described in the warrant to render their seizure appropriate. *See United States v. Timpani,* 665 F.2d 1, 5 (1st Cir. 1981).

*4. Severance.* Next, Emerson contends that the district court erred in refusing to grant his motion for severance. In particular, Emerson contends that it is unreasonable to suggest that the jury, after hearing the evidence adduced against both defendants, could compartmentalize it with respect to each defendant and return fair verdicts.

■ In general, coconspirators should be tried together, particularly when the proof of the charges against them is based upon the same acts and evidence. *United States v. Arenal,* 768 F.2d at 267. The decision to deny a motion for severance lies within the sound discretion of the district court and will not be overturned on appeal absent a showing of abuse or clear prejudice. *Id.* at 268. A defendant's burden in making this showing has been characterized as heavy, *United States v. Robinson,* 774 F.2d 261, 266 (8th Cir.1985), and our review of the record in the case at hand persuades us that it has not been satisfied here. Although Emerson argues that the evidence against Martin was stronger thereby prejudicing Emerson's case, "defendants are not entitled to severance just because the evidence against a codefendant is more damaging than the evidence against them." *Arenal,* 768 F.2d at 268. Moreover, the most damaging evidence, that seized from Martin's vehicle, was equally admissible against Emerson. Emerson has not shown any other source of potential prejudice; he has not alleged that severance was necessary because he and Martin asserted antagonistic defenses, nor has he alleged that Martin would have offered exculpatory evidence in his behalf if they had been tried separately. In these circumstances, we conclude that the district court committed no reversible error in refusing to grant the severance motion.

*5. Hearsay Testimony of Coconspirator King.* Emerson also argues that the district court erroneously admitted certain hearsay declarations made by King con-

cerning various statements attributed to Martin and Emerson. Specifically, Emerson contends that the evidence was insufficient to establish the existence of a conspiracy and thus that the coconspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E), is inapplicable.

Our review of the record discloses ample evidence of a conspiracy between King and the defendants. King's testimony indicates that he suggested to Martin and Emerson that they case the drug store in New Hope and that, in fact, he drove the defendants there. King further testified that Martin and Emerson told him they had been looking for a secluded drug store to break and enter. King stated that he wished to participate in the crime because he hoped to receive some Dilaudid for his efforts. This testimony, in addition to the independent evidence of the conspiracy such as the testimony of the drug store personnel and Officer Shannon, was appropriate for the district court to consider in determining whether a conspiracy existed for purposes of Rule 801(d)(2)(E). *See Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 2780, 97 L.Ed.2d 144 (1987); *see also United States v. Scholle,* 553 F.2d 1109, 1117 (8th Cir.) ("The independent evidence of illicit association may be completely circumstantial, or may consist of the conspirators' own conduct and admissions"), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). Furthermore, although Emerson suggests otherwise, "[t]here is no requirement that the independent evidence of conspiracy be introduced prior to the introduction of the coconspirator's statement." *United States v. Jackson,* 549 F.2d 517, 533 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Accordingly, we conclude that Emerson's claim is without merit.

*6. Addict–Informant Instruction.* Emerson further argues that the district court erred in refusing to submit his requested addict-informant instruction, and instead using a patterned instruction. A district court has wide discretion in formulating jury instructions, *United States*

*v. Reda,* 765 F.2d 715, 719 (8th Cir.1985), and "as long as the entire charge fairly and adequately contains the law applicable to the case, the judgment will not be disturbed on appeal." *Board of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983) (citations omitted). Assuming without deciding that Emerson was entitled to an addict-informant instruction, *see United States v. Dempewolf,* 817 F.2d 1318, 1321 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987), the instruction submitted by the district court fairly and adequately stated the applicable law with respect to addict-informants. Consequently, we find no error in the district court's refusal to submit Emerson's requested instruction.

*7. Sufficiency of the Evidence.* Finally, Emerson argues that the evidence was insufficient to support his conviction on Count III because there is no evidence showing a plan by Emerson and Martin to possess and distribute drugs. Emerson further argues that the evidence was insufficient on the burglary count because King's testimony was the only evidence implicating Emerson in the burglary.

In reviewing the denial of a motion for judgment of acquittal, we must view the evidence in the light most favorable to the government, *United States v. Springer,* 831 F.2d 781, 783 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1117, 99 L.Ed.2d 277 (1988), and the government is given the benefit of all reasonable inferences that may logically be drawn from the evidence. *Id.* at 783–84. "A motion for judgment of acquittal should be granted only where the evidence ... is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. White,* 562 F.2d 587, 589 (8th Cir.1977) (per curiam) (internal quotations omitted).

Our review of the record in light of the principles delineated above leads us to conclude that the evidence was sufficient to support Emerson's conviction as to both counts in question. Contrary to Emerson's

assertion, King's testimony was not the only evidence implicating Emerson in the New Hope burglary; various personnel at the drug store also identified Emerson as one of the individuals casing the store. In addition, Officer Shannon's testimony concerning the defendants' behavior in Frazee, Shannon's observation of burglary tools, and the items seized from both defendants' vehicles provided a substantial basis for the jury's verdict. Although there is no direct evidence of the defendants' intent to distribute the stolen narcotics, it is rare that direct evidence of intent will ever exist, and consequently we have previously held that intent may be proved with circumstantial evidence. *E.g., United States v. Hudson,* 717 F.2d 1211, 1213 (8th Cir.1983). In short, Emerson has not sustained his heavy burden of establishing that the evidence is insufficient to establish his guilt. Hence, we conclude that this claim is without merit.

### III.

In conclusion, we have reviewed each of the assignments of error raised by the appellants and find them to be without merit. Accordingly, the judgments of the district court are affirmed.