**UNITED STATES of America, Appellee,**

**v.**

**Lonnie Eugene HUGHES, Appellant.**

**No. 93–2159.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1993.

Decided Feb. 7, 1994.

Counsel who presented argument on behalf of the appellant was Virginia G. Villa of Minneapolis, MN.

Counsel who presented argument on behalf of the appellee was James E. Lackner, Assistant U.S. Attorney, of Minneapolis, MN.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, and HEANEY and ROSS, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Appellant Lonnie Eugene Hughes was convicted of possession with intent to distribute cocaine base, 21 U.S.C. § 841(a), and with using a firearm during and in relation to a drug trafficking offense, 18 U.S.C. § 924(c).

Hughes now appeals his conviction alleging several points of error, including a claim that improper testimony was admitted, that evidence was seized in violation of his Fourth Amendment rights and that the evidence was insufficient to sustain his conviction. We have carefully considered each of appellant's arguments and now affirm the judgment of the district court.[1]

I.

On September 24, 1992, after obtaining information from a confidential informant that a man named "Lonnie," who lived at 317 31st Avenue North, sold cocaine, Brooklyn Park Detective Robert Malmquist obtained a search warrant to search the premises and the persons located therein. The confidential informant also told the detectives that Lonnie often carried a gun and drove a white Cadillac. After the search warrant was obtained, the officers observed the residence a number of times over several days looking for the return of the white Cadillac. On September 29, 1992, at approximately 4:00 p.m., Agent Catherine Kaminski and Detective Malmquist noticed a white Cadillac parked in front of the residence under surveillance. A license check revealed that the car was registered to appellant, Lonnie Hughes. On that same day, the confidential informant called appellant and asked him to deliver an ounce of cocaine to him. Appellant allegedly told the informant that he had the cocaine, but he would be unable to deliver it and told the informant to come to the 317 31st Avenue North residence to buy the drugs.

At 6:00 p.m., the officers returned to the area to execute the warrant. The officers observed the white Cadillac still parked in front of the residence, this time with three people travelling back and forth, moving things from the residence to the car. One of the individuals then got into the Cadillac and drove past Agent Kaminski and Detective Malmquist, who were able to identify the driver as appellant. The officers followed the Cadillac until it pulled into an alley and

parked. Appellant got out of his car as the officers approached.

Based on their knowledge that appellant had a criminal history of a previous weapons violation, and the confidential informant's statement that appellant often carried a gun, the officers performed a patdown search of appellant's clothing prior to any questioning. As Detective Malmquist conducted the search for weapons, he felt a bulge in appellant's left jacket pocket which turned out to be $2,390 in cash. The patdown search of appellant's left front trouser pocket revealed small lumps which Officer Malmquist believed to be crack cocaine. Upon inspection, the officer discovered that these were in fact nine rocks of crack cocaine, five of which were individually wrapped, and weighing a total of 2.5 grams. Appellant was then placed under arrest and a warrant was obtained to search appellant's car. A search of the trunk revealed 23 grams of crack cocaine and 6 grams of cocaine powder hidden on the underside of a child's car seat. The officers also found a fully-loaded .22 caliber revolver in an overnight bag located in the trunk of the car, next to the booster seat.

II.

■ Appellant first argues that certain expert testimony should not have been admitted because the testimony was based on the witness's subjective perceptions and not on any systematic course of inquiry. Rule 702 allows an expert to give an opinion when a specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. However, "if an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury, then the testimony should not be admitted." *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 570 (8th Cir.1988). The decision whether to permit expert testimony is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *United States v. Rose*, 731 F.2d 1337, 1345 (8th Cir.), *cert.*

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

denied, 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984).

■ Here, the expert testified that the purity level of the crack found in appellant's pocket was the same as the purity level of the crack found in appellant's trunk, and further that this was a significant factor in determining whether the two exhibits of crack came from the same source or batch. She further stated that in her experience it is unusual to find two batches of crack with the same purity level. The expert did not testify, however, as to the ultimate issue of whether these two exhibits of crack were from the same source or batch.

Appellant relies on our previous decision in *United States v. Arenal*, 768 F.2d 263 (8th Cir.1985). *Arenal* is distinguishable, however, in that the expert there testified that it was his opinion that the various exhibits of cocaine had a common source. It was this portion of the testimony that this court found objectionable. The court stated:

> [O]nce [the expert witness] had testified—albeit in rather general terms—that cocaine at the street level normally has more than one cut, and that it is unusual to find cocaine at several locations cut only with Inositol, the jury was competent to draw its own conclusion about the existence of a relationship among the alleged co-conspirators.

*Id.* at 269–70.

Here, unlike *Arenal*, no testimony was presented by the expert that the crack seized from appellant's pocket came from the same batch as the crack found in the trunk of his car. Rather, the jury was allowed to draw its own conclusion about the relationship based on the expert's testimony that it is unusual to find crack with an identical purity level. This testimony was based on the expert's 32 years of experience as a public health chemist, whose duties include testing controlled substances for police department investigations. The expert's testimony was admissible under Rule 702.

## III.

Appellant next asserts that the evidence seized from his person exceeded the scope of a *Terry* stop and frisk in violation of the Fourth Amendment and therefore should have been suppressed.[2]

■ An investigative stop is permitted under the Fourth Amendment when a law enforcement officer is able to point to specific and articulable facts which, taken with rational inference from those facts, create a reasonable suspicion that the person has or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Thompkins*, 998 F.2d 629, 633 (8th Cir.1993).

■ In the present case, the record reveals that a reliable confidential informant notified Detective Malmquist that "Lonnie" went back and forth to Memphis to obtain cocaine and sell it as crack in the Twin Cities and that Lonnie and a woman sold crack from the residence at 317 31st Avenue North. The informant further gave a physical description of appellant, stated that Lonnie drove a white Cadillac and often carried a gun. A controlled purchase of crack was made at 317 31st Avenue North prior to obtaining the warrant, although the buy was not from appellant himself. The day of the stop, the police officers found the white Cadillac parked in front of the address given by the informant, and a license check revealed that the car was registered to Lonnie Hughes. Also on the day of the stop, the confidential informant confirmed that appellant was in possession of at least one ounce of cocaine. When the officers arrived to execute the warrant, they saw appellant, with the help of others, loading his car and trunk. Appellant displayed nervousness as he drove off and noticed that he was being followed by

---

2. Although appellant raised the issue before the magistrate judge, he allegedly filed no objections to the Report and Recommendation which denied the suppression motion. Relying on *United States v. Caldwell*, 954 F.2d 496, 500 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992), the government argues that the appellant has waived his Fourth Amendment argument and it must now be considered under a plain error standard. Because we conclude that the search and seizure were proper under either standard, we do not reach the question whether the issue was properly preserved.

the officers. Based on the evidence in the record, we conclude that this is more than sufficient evidence to justify the initial investigative stop under *Terry*.

■ Once a valid stop has been made, police can pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed. *See Terry v. Ohio, supra*, 392 U.S. at 21, 88 S.Ct. at 1879; *United States v. Brooks*, 2 F.3d 838, 842 (8th Cir.1993). In this case, the officers were informed by the confidential informant that appellant often carried a weapon and the officers knew that appellant had been convicted of an earlier weapons violation. Based on this information, the officers were justified in conducting the subsequent protective patdown search.

Appellant also contends, however, that the search of appellant's pockets exceeded the scope of a *Terry* frisk for weapons. As Detective Malmquist patted down appellant's outer clothing he first discovered a large lump in appellant's front pocket which turned out to be a wad of cash. As he continued to search for weapons he patted appellant's pants pocket and felt what he "thought would be crack cocaine."

In *Minnesota v. Dickerson*, — U.S. —, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court approved a "plain feel" exception to the warrant requirement. The Court held that if "a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons" under *Terry*. *Id.* at —, 113 S.Ct. at 2137.

In so holding, the Court required that the incriminating character of the contraband be "immediately apparent" during the frisk. The Court concluded that the search in *Dickerson* exceeded the scope of *Terry* because the incriminating character of the felt object was not immediately apparent to the officer. *Id.* at —, 113 S.Ct. at 2139. The Court emphasized that the officer determined that the lump was contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—a pocket

which the officer already knew contained no weapon." *Id.* at —, 113 S.Ct. at 2138.

■ In contrast, in the instant case Detective Malmquist testified that when he patted down appellant's pants pocket for weapons he "could feel lumps that [he] thought would be crack cocaine." According to his testimony, Detective Malmquist's first impression was that the object was contraband; there was no further manipulation of the object. Therefore, under *Dickerson*, the officer was entitled to seize the item. We conclude the initial stop, subsequent frisk and eventual seizure of the contraband was in accord with the *Terry* test.

## IV.

■ Finally, appellant makes two arguments regarding the sufficiency of the evidence to support his conviction. In reviewing appellant's challenge to the sufficiency of the evidence, "we must affirm the conviction if, after viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, we conclude that a reasonable jury could have found [defendant] guilty beyond a reasonable doubt." *United States v. Mejia*, 8 F.3d 3, 5 (8th Cir.1993) (citing *United States v. Jones*, 990 F.2d 1047, 1048 (8th Cir.1993)).

■ Appellant first argues that the evidence was insufficient to support his conviction for possession of crack with an intent to distribute. He contends the evidence does not sufficiently establish that he intended to distribute the crack found in his pants pocket. We disagree. The nine rocks of seized crack, totalling 2.5 grams, were divided into five individually wrapped packages. Also found on appellant was a pager, $2,390 in cash, and a police radio scanner. The officers discovered another 23 grams of crack hidden in the trunk of appellant's car as well as a loaded gun. Further, an expert witness testified that both the amount and the packaging used for the 2.5 grams was indicative of possession with intent to distribute and not for personal use. This evidence was more than sufficient to support the conviction

for possession of crack with intent to distribute.

 Appellant also argues that the government failed to produce sufficient evidence to show that the gun seized from the trunk of his car was used or carried during and in relation to the charged predicate drug trafficking offense, as required by 18 U.S.C. § 924(c)(1). This court has held that the fact that the gun may not have been immediately available is not dispositive of the issue of whether the gun was used during and in relation to a drug offense. *United States v. Knox,* 950 F.2d 516, 519 (8th Cir.1991). The government need not prove that the defendant brandished, discharged or carried the weapon at the time of the offense for the jury to find defendant used the firearm during and in relation to a drug trafficking crime. Rather, "use" may be inferred from the firearm's availability and presence. *United States v. Jones, supra,* 990 F.2d at 1049–50; *United States v. Knox, supra,* 950 F.2d at 518–19 (gun was in the passenger compartment of the car while the defendant was arrested exiting a building carrying drugs and an ammunition clip). Moreover, the Supreme Court has recently stated that the term "in relation to" under section 924(c)(1) was intended to have an "expansive" meaning. *Smith v. United States,* —— U.S. ——, ——, 113 S.Ct. 2050, 2058, 124 L.Ed.2d 138 (1993). The phrase "clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime," and requires that the firearm " 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." *Id.* at ——, 113 S.Ct. at 2059 (alteration in original (quoting *United States v. Stewart,* 779 F.2d 538, 539 (9th Cir.1985)).

 Here, the jury could reasonably infer that the weapon located in the trunk was used to facilitate the appellant's possession and alleged intended sale of the narcotics. The gun was located next to a large quantity of drugs and was readily available to protect appellant's drug supply. Under these circumstances, the possession of the gun had the potential of facilitating the drug transaction by serving to protect the drugs. We conclude that the government produced sufficient evidence to support the jury's verdict.

V.

Based on the foregoing, the judgment of the district court is affirmed in all respects.