UNITED STATES of America, Plaintiff-Appellee,

v.

Charles Kenneth MASSON, a/k/a Kenny, Defendant-Appellant.

No. 78–5002
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 26, 1978.

Rehearing Denied Nov. 27, 1978.

---

* Rule 18, 5 Cir., *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Cecil M. Burglass, Jr., New Orleans, La., for defendant-appellant.

John P. Volz, U. S. Atty., Ernest C. Chen, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

COLEMAN, Circuit Judge.

During the fall of 1975, Henry Vigelette, Lawrence Valenti, and Eulalie Trapani were partners in a bookmaking business which violated 18 U.S.C. § 1955 [1] by operating in violation of Louisiana law, involving more than five persons, and generating gross revenue of more than $2000 in a single day. All three testified at the trial of Charles Kenneth (Kenny) Masson, the appellant here, who had been charged on two counts of conspiracy to violate 18 U.S.C. § 1955 and aiding and abetting violations of 18 U.S.C. § 1955.[2] The jury found Masson

---

1. 18 U.S.C. § 1955 provides in relevant part:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, book-making, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

2. The indictment also charged Donald Melancon and Casey Killian with similar violations. Killian pled guilty to a Bill of Information charging a violation of 26 U.S.C. § 7203 and was fined. Masson moved to sever his trial

guilty on both counts, and the trial judge fined him $500 on each count and placed him on probation for five years. On appeal, Masson raises three arguments: (1) whether Count 2 of the indictment was "duplicitous" by charging violations of 18 U.S.C. §§ 1955 and 2; (2) whether certain testimony of the government's expert witness should have been excluded; and (3) whether the evidence was sufficient to sustain the conviction. We affirm.

■ Masson first argues that Count 2 of the indictment charged him with the commission of two offenses in violation of Fed. R.Crim.P. 8(a).[3] Analysis of this issue properly begins with the words of the indictment, which charged that Masson and other named individuals "unlawfully, willfully and knowingly did, and aided and abetted each other in order to, conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, . . all in violation of Title 18, United States Code, Section 1955 and 2." Masson views this language as charging him with the commission of two separate crimes, i. e., "aiding and abetting" and "illegal gambling."

■ This argument is flawed for at least three reasons. First, one cannot be convicted of merely "aiding and abetting." One must aid and abet the commission of some substantive offense in order to be punishable as a principal under 18 U.S.C. § 2. *Powers v. United States,* 5 Cir. 1972, 470 F.2d 991; *United States v. Campbell,* 2 Cir. 1970, 426 F.2d 547, 553. Second, an aider and abettor may be charged as a

principal, and the words "aid and abet" do not have to appear in the indictment in order to sustain a conviction as an aider and abettor. *Pigford v. United States,* 4 Cir. 1975, 518 F.2d 831, 834–35; *United States v. Romero,* 5 Cir. 1974, 495 F.2d 1356, *cert. denied,* 419 U.S. 995, 95 S.Ct. 307, 42 L.Ed.2d 267 (1974); *United States v. Trollinger,* 5 Cir. 1969, 415 F.2d 527, 528 n. 3. If one can thus be convicted of aiding and abetting the commission of an offense without being specifically so charged in the indictment, then the indictment in this case merely made explicit what was already implicit as a matter of law. For purposes of the Double Jeopardy Clause, therefore, Masson has been convicted of aiding and abetting a violation of 18 U.S.C. § 1955, the substantive statute, and he is being punished as a principal by virtue of 18 U.S.C. § 2.[4] Finally, Masson does not claim, and probably could not claim, that his ability to defend the accusation of the grand jury was prejudiced by the phraseology of the indictment.

■ Masson's second challenge is to the admissibility of certain parts of the testimony of the government's expert witness. The expert witness, an FBI agent with extensive experience and knowledge of bookmaking operations and terminology, was properly qualified as an expert. Defense counsel did not object to his qualifications, but rather on the grounds that the witness had an "interest" in the outcome of the trial. That objection was correctly overruled by the trial judge.[5]

from that of Melancon, and the trial judge granted that motion. Melancon was subsequently convicted by the jury in his trial.

3. Fed.R.Crim.P. 8(a):

 (a) *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

4. In cases of group criminality, such as we have here, it is not necessary that each defendant commit every element of the offense. For instance, any single member of the group might never generate $2000 of revenue in a single day for the illegal activity, but if he contributed some revenue or aided in the accumulation of such an amount of revenue, he could be found guilty of aiding and abetting the commission of the substantive offense. *See United States v. Jackson,* 5 Cir. 1976, 526 F.2d 1236.

5. Defense counsel attempted to demonstrate that the agent had an interest in securing a conviction, but he was unable to establish sufficient bias or prejudice to warrant exclusion of

The expert's testimony was necessary to aid the jury in understanding the meaning of 12 tape-recorded conversations[6] which were admitted in evidence and implicated Masson in the illegal bookmaking operation. These conversations were carried on in the jargon characteristic of the gambling business, and the expert clarified the meanings of the various phrases and terms for the jury. We have previously sanctioned the use of such testimony. See, e. g., *United States v. Milton,* 5 Cir. 1977, 555 F.2d 1198, 1203–05; *United States v. McCoy,* 5 Cir. 1976, 539 F.2d 1050, 1062–63.

■ Masson specifically objects to the expert's testimony that appellant is a "sub-bookmaker working for a commission, calling in betting wagers to the main recording center, and is in fact not a mere player." (A. 136). Rule 704 of the Federal Rules of Evidence specifically permits expert testimony on an "ultimate issue" so long as the testimony is otherwise admissible. This testimony was surely relevant, there was no waste of time, and any prejudicial impact did not substantially outweigh the probative value of the testimony. The trial judge did not abuse his broad discretion in admitting this testimony. *See Milton, supra; McCoy, supra.*

■ Appellant's last contention is that the evidence was insufficient to sustain the

the testimony, as the following colloquy amply demonstrates:

> MR. BURGLASS: Were you an investigating agent in connection with this case?
> A. Yes, sir.
> Q. You have an interest in the result of these proceedings, then, as the investigating agent?
> A. Not the outcome as to whether it is win, lose or draw, only that it is my job to obtain evidence, and when I obtain the evidence I turn it over to the United States Attorney's office and from that point on, of course, it is not in my hands. I am merely an investigator who gathers the evidence, so I can't say that I have a vested interest in the outcome of the case.
> Q. I wasn't talking about a vested interest, Agent Baken. You would prefer, would you not, that the defendant be convicted than acquitted, wouldn't you?
> A. Only if guilty.
> Q. Well, you believe that he is guilty, do you not?
> MR. DUPLECHIN (Prosecutor): Your Honor, I object to that form of question.
> THE COURT: I sustain the objection. That is for the jury to determine.
> MR. BURGLASS: You have no interest in the outcome of what the jury determines in this case?
> A. That is the province of the jury and I—
> Q. I understand.
> A. I can't do that.
> Q. I am asking you if you have an interest. Do you care?
> A. Well, as a human being, of course I would care, but it is not—it doesn't really make any difference to me personally whether or not the jury finds an individual innocent or guilty. It is based on the evidence, and it is not a personal matter with me, no, sir.
> \* \* \* \* \* \*

> THE COURT: The Court will accept the witness as an expert in bookmaking operations and bookmaking terminology. Now, you may make your objection.
> MR. BURGLASS: We object, Your Honor, that the agent obviously has an interest in the outcome of the proceedings.
> THE COURT: Well, the objection is overruled.
> MR. BURGLASS: I understand.
> THE COURT: I suppose every agent, every good agent, every good policeman, has an interest in doing his job.
> MR. BURGLASS: I object to that statement, Your Honor.

(A. 78–81). Appellant objects that he was not allowed to question the expert as to whether he believed the defendant guilty. The trial judge correctly refused to permit this line of questioning. Many witnesses probably do have a personal opinion as to whether a defendant is innocent or guilty, but that fact alone does not disqualify them as witnesses. If the rule were otherwise, trials might well become a sterile battleground of documentary evidence with few, if any, live witnesses with actual knowledge of the crime. The job of a witness is to testify as to his knowledge of the facts, and the jury is then free to accept or reject that version of the facts. Furthermore, a witness' expression as to the guilt of a particular defendant would be a legal conclusion, against which we have previously cautioned courts to "remain vigilant." *United States v. Milton,* 5 Cir. 1977, 555 F.2d 1198, 1203. In short, no reversible error was committed.

6. These tapes were part of a total of 3,264 telephone calls which had been intercepted and recorded pursuant to valid authorization by a District Judge. No challenge to the validity of the intercept was made in the trial court or on appeal. In fact, defense counsel stipulated to the admission of the tapes and the transcripts.

conviction. This contention fails if there is substantial evidence, taking the view most favorable to the government, to support it. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Warner,* 5 Cir. 1971, 441 F.2d 821, *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

Vigelette, the ringleader in this bookmaking operation, testified that appellant placed wagers with his book on a twenty-five percent commission basis. Call No. 7 of Government Exhibit 4 was a telephone conversation between the appellant and Vigelette, who testified that the call indicated that appellant was a commissioned sub-bookmaker. Valenti, Vigelette's partner, initially testified that he thought appellant was a mere bettor, but that he could not remember if appellant was also placing wagers with the book on a commission basis. However when confronted with his grand jury testimony, Valenti admitted that appellant was in fact placing wagers on a twenty-five percent commission basis.

Further evidence was supplied by the tapes and the FBI agent's interpretation of them. On the tapes, the caller identifies himself as "Kenny" and makes bets on various horse races and football games. In successive calls, he makes different bets on the same game and is instructed to change his point spread on a particular game. Significant sums of money are bet within a short period of time. The agent testified that the pattern of calls indicate that the caller is more than a bettor and is making bets for others. In addition, he testified that the terminology used in the calls was consistent with that conclusion. Another tape of a conversation between Vigelette and Valenti indicates that the two men discussed the "bottom line" and the "make-up" of the appellant. The agent testified that the terminology refers to the commission which a sub-bookmaker is paid. Vigelette also supported this interpretation of the terms "make-up" and "bottom line".

This evidence was sufficient to establish that appellant was more than a mere bettor. He was a participant in the illegal gambling enterprise and was, in the phraseology of the profession, a sub-bookmaker. As such, he is well within the ambit of 18 U.S.C. § 1955. *United States v. Boyd,* 5 Cir. 1978, 566 F.2d 929, 934–35; *United States v. Mackey,* 5 Cir. 1977, 551 F.2d 967; *United States v. Joseph,* 5 Cir. 1975, 519 F.2d 1068, 1071, *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1975); *United States v. Bridges,* 5 Cir. 1974, 493 F.2d 918, 921; *United States v. Harris,* 5 Cir. 1972, 460 F.2d 1041, *cert. denied,* 409 U.S. 877, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972).

AFFIRMED.

---

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.