UNITED STATES of America,
Plaintiff–Appellee,

v.

Thyrus Montez BROWN, Defendant–
Appellant.

No. 92–1971.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1993.

Decided Oct. 15, 1993.

James E. Beckman (argued), Office of U.S. Atty., Springfield, IL, for plaintiff-appellee.

Brian T. Otwell (argued), Huntley & Giganti, Springfield, IL, for defendant-appellant.

Before CUDAHY and ROVNER, Circuit Judges, and REAVLEY, Senior Circuit Judge.*

ILANA DIAMOND ROVNER, Circuit Judge.

A jury found Thyrus Brown guilty of one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), and one count of use of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). On appeal, Brown argues that the district court abused its discretion in admitting expert testimony on the issue of his intent to distribute the cocaine base found in his possession. Brown also contends that the evidence was insufficient to support the jury's verdict on the intent to distribute charge. We affirm.

## I. BACKGROUND

During the early morning hours of August 4, 1991, four squad cars of the Springfield Police Department were dispatched to the Brandon Addition Housing Project in Springfield, Illinois, to investigate a report that several men were congregating in the vicinity of the housing project and that shots had been fired. Officer Michael Goin left his squad car and proceeded on foot to the southwest corner of the project, while three other officers drove to the area of the reported incident. As the officers approached in their squad cars, the men scattered. Brown ran south and then west, coming directly upon Officer Goin. Goin turned his flashlight on Brown and observed that Brown was wearing dark pants and no shirt and that a handgun was tucked in the waistband of his pants. Goin drew his weapon and ordered Brown to drop the gun and to lie on the ground. Brown did so, and he was then

* The Honorable Thomas M. Reavley, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

handcuffed and searched. The officers recovered Brown's handgun, a nine millimeter Colt semi-automatic pistol containing eight live rounds of ammunition in its magazine and one live round in the chamber. Goin also found a large brown plastic prescription bottle containing twenty-five pieces of crack cocaine in Brown's right pocket, nine additional rounds of live ammunition in his left pocket, and eighty-two dollars in cash. The twenty-five "rocks" of crack cocaine were equivalent to 2.3 grams of a substance containing cocaine base.

At trial, the government introduced into evidence the handgun and the items seized from Brown, and presented the testimony of seven witnesses. Four police officers described the circumstances of Brown's arrest and established the chain of custody of the physical evidence. A forensic scientist testified about the quantity of cocaine base seized from Brown. A special agent of the Bureau of Alcohol, Tobacco and Firearms also testified that Brown's handgun was fully operational.

In addition, over Brown's objection, Special Agent John Schaefer of the Drug Enforcement Administration ("DEA") was permitted to testify as an expert witness. Agent Schaefer, a twelve-year veteran of several law enforcement agencies, has held his present DEA position for nearly six years. During his career, Schaefer has participated in over 500 narcotics investigations, many of which involved crack cocaine. He previously has testified as an expert witness concerning the habits and practices of narcotics distributors. Prior to testifying in this case, Agent Schaefer, who had not been directly involved in the Brown investigation, familiarized himself with the police reports concerning Brown's arrest and examined the physical evidence.

On direct examination, Schaefer described the methods for manufacturing crack cocaine, the form in which it typically is sold, and the street price for various quantities of the drug. He also described the typical paraphernalia associated with street-level crack distributors and compared that with the paraphernalia and behavior patterns usually associated with those possessing crack only for personal use. On the witness stand, Schaefer was permitted to inspect the prescription bottle seized from Brown and to examine the rocks of crack cocaine. He then testified as follows:

Q. Now, Agent Schaefer, can you tell the ladies and gentlemen of the jury what this information that you have described that you familiarized yourself with, concerning the defendant and his activities, what that indicates to you?

A. That this crack cocaine was intended for distribution.

[Objection.]

[Overruled.]

Q. And why do you say that?

A. Well, because the circumstances surrounding that are described in the report. And the fact that there was no paraphernalia, no smoking device found on the individual, and the weapon that was found.

Q. What circumstances would you highlight? What circumstances are you specifically referring to?

A. Well, the crack bottle, itself, is rather bulky. And it contains about twenty-five rocks of about the same size. Those rocks are about $20.00 rocks, at least, on the street. The sales price, coupled with that and the gun, would lead me to that conclusion.

Q. Would it be typical for a person who was using it to have that type of supply on his person for personal use?

A. No.

Q. Why do you say that?

[Objection.]

[Overruled.]

A. Well, crack cocaine is smoked. But it has to be broken off, chipped, and put into a pipe. A user, or a person that would be using it, would not typically bring that much, in my opinion, out to where it could all be taken away.

(Tr. at 156–57.)

Following this direct testimony, Brown's attorney conducted a thorough and vigorous cross-examination of Schaefer, in which he established that a mere user of crack might carry a weapon to protect himself, that a

crack dealer usually carries a beeper, and that eighty-two dollars was not a large sum for a crack dealer to carry. Schaefer testified that a crack addict typically purchases more than one rock for personal consumption, that he could not quote the precise street value of the rocks confiscated from Brown, and that he could not estimate how much crack cocaine a particular addict would need to consume to achieve the desired effect.

Brown's wife then testified in his defense, stating that her husband was a crack cocaine addict who consumed the drug daily and that he could consume in one night the quantity the police officers had seized. She also stated that she did not know Brown to carry large sums of cash beyond the amounts he received as a weekend security guard, and that she had never seen Brown selling crack cocaine.

## II. ANALYSIS

On appeal, Brown renews his challenge to the admissibility of Agent Schaefer's expert testimony on the following grounds: (1) there was no specialized evidence here that would require the testimony of an expert witness to aid the jury's understanding; (2) the dearth of evidence upon which to base an expert opinion meant that Schaefer's testimony was merely speculative and lacked a proper foundation; (3) Schaefer should not have been allowed to express an opinion concerning the ultimate issue of Brown's intent to distribute the crack; and (4) the probative value, if any, of Schaefer's testimony was outweighed by its unfair prejudice. Brown also contends that the evidence was insufficient to prove that he possessed the crack in order to distribute it.

### A. Schaefer's Expert Testimony

■ Our review of a district court's evidentiary rulings is, in general, highly deferential. *See United States v. Briscoe*, 896 F.2d 1476, 1489–90 (7th Cir.), *cert. denied*, 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). The admission of expert testimony will be reversed only upon a showing that the

district court committed "a clear abuse of discretion." *United States v. Amaechi*, 991 F.2d 374, 377 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993); *United States v. DeSoto*, 885 F.2d 354, 359 (7th Cir.1989). Special deference also is due the district court's assessment of the probative value of evidence because that court is in the best position to balance probative value against the danger of unfair prejudice. *See* Fed.R.Evid. 403; *United States v. Hughes*, 970 F.2d 227, 232, 233 (7th Cir. 1992); *United States v. Foster*, 939 F.2d 445, 457 (7th Cir.1991).

■ In determining whether to admit expert testimony, the crucial inquiry is whether the testimony will be helpful to the jury in resolving a controverted issue. Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Moreover, under Rule 704, a qualified expert in a criminal case is not precluded from suggesting inferences to be drawn from the facts, including inferences that embrace an ultimate issue (*see* Fed.R.Evid. 704(a); *Hughes*, 970 F.2d at 236),[1] provided the expert does not express a direct opinion concerning "whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." Fed.R.Evid. 704(b); *see Foster*, 939 F.2d at 454; *United States v. Richard*, 969 F.2d 849, 854 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1009, 122 L.Ed.2d 157 (1993); *United States v. Theodoropoulos*, 866 F.2d 587, 591 (3d Cir.1989); *United States v. Dotson*, 817 F.2d 1127, 1131–32 (5th Cir.), *vacated in part on other grounds*, 821 F.2d 1034 (1987) (per curiam).

■ In determining whether expert testimony will be helpful to the jury in a particular case, the court is required to evaluate

---

**1.** *See also United States v. Boissoneault*, 926 F.2d 230, 232 (2d Cir.1991); *United States v. Theodoropoulos*, 866 F.2d 587, 591 (3d Cir.1989); *United States v. Kinsey*, 843 F.2d 383, 388–89 (9th Cir.), *cert. denied*, 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988).

"'the state of knowledge presently existing about the subject of the proposed testimony'" in light of its "'appraisal of the facts of the case.'" *DeSoto,* 885 F.2d at 359 n. 3 (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02], at 702–18 (1988)). Because courts have recognized that the average juror is unlikely to be knowledgeable about drug trafficking, they consistently have allowed expert testimony concerning the "tools of the trade" and the methods of operation of those who distribute various types of illegal narcotics. *See Foster,* 939 F.2d at 451–52 & n. 6 (collecting cases); *DeSoto,* 885 F.2d at 359; *see also United States v. Boney,* 977 F.2d 624, 628 (D.C.Cir.1992); *United States v. McDonald,* 933 F.2d 1519, 1522 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991); *United States v. Boissoneault,* 926 F.2d 230, 232–33 (2d Cir.1991); *United States v. Dunn,* 846 F.2d 761, 762–63 (D.C.Cir.1988). In particular, such testimony has been admitted to establish the meaning of narcotics code words (*see Hughes,* 970 F.2d at 236; *United States v. Rollins,* 862 F.2d 1282, 1292 (7th Cir.1988), *cert. denied,* 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989); *Theodoropoulos,* 866 F.2d at 590–92), and of written records of narcotics transactions (*United States v. Duarte,* 950 F.2d 1255, 1261 (7th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992)); to describe various countersurveillance techniques used by drug dealers to avoid detection by the police, (*see DeSoto,* 885 F.2d at 360), and the use of beepers to arrange clandestine narcotics transactions (*see United States v. Solis,* 923 F.2d 548, 550–51 & n. 4 (7th Cir. 1991) (collecting cases)); to familiarize jurors with the quantity, purity, usual dosage units and street value of narcotics (*see Amaechi,* 991 F.2d at 377, 378; *United States v. Douglas,* 874 F.2d 1145, 1154 (7th Cir.), *cert. denied,* 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989); *United States v. Safari,* 849 F.2d 891 (4th Cir.), *cert. denied,* 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988)); and to describe paraphernalia specifically associated with the manufacture or distribution of illegal drugs (*see Dunn,* 846 F.2d at 762, 763). Expert witnesses have also been permitted to present general background infor-mation on the subject of drug trafficking, including typical behavior patterns characterizing both users and distributors. *See Foster,* 939 F.2d at 451 & n. 6 (collecting cases); *McDonald,* 933 F.2d at 1522; *see also United States v. Gomez–Norena,* 908 F.2d 497, 500–01 (9th Cir.) (expert testimony concerning drug courier profile admitted for limited purpose of providing background information), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990).

■■ Pointing to the fact that he was not carrying specialized drug paraphernalia, Brown argues that there was no evidence here requiring the testimony of an expert to facilitate the jury's understanding. However, Brown's argument is premised upon too narrow a reading of Rule 702's helpfulness requirement. The "helpfulness" of expert testimony under Rule 702 is determined by evaluating the present state of knowledge about the subject of the testimony, in light of the issue that must be determined and the facts the jury must consider in reaching its decision. *See DeSoto,* 885 F.2d at 359 & n. 3; Fed.R.Evid. 702. Here, the issue was whether Brown possessed the twenty-five rocks of crack cocaine for distribution or for personal use. The average juror probably would be unfamiliar with the street-level distribution of crack cocaine, the prices of crack cocaine rocks, or the significance, if any, of the amount of crack confiscated from Brown. Moreover, the average juror might be unable to determine whether the absence of certain drug paraphernalia typically associated with crack cocaine is significant. Agent Schaefer's testimony was therefore helpful to the jury in understanding the evidence and in resolving the central issue of Brown's intent.

■ Brown also argues that the underlying evidence was insufficient to support an expert opinion, meaning that Schaefer's testimony was admitted without a proper foundation. In evaluating Brown's contention, we are guided by Federal Rule of Evidence 703, which provides that the particular facts or data relied upon by Schaefer in forming his opinion must be "of a type reasonably relied upon by experts in the particular field." As we recently observed in *Cella v. United States,* 998 F.2d 418, 423 (7th Cir.1993), Rule

703 requires that "expert testimony ... be rejected if it lacks an adequate basis in fact. An expert witness cannot simply guess or base an opinion on surmise or conjecture." (citing *In re Agent Orange Prod. Liab. Litigation,* 611 F.Supp. 1223, 1244, 1248–49 (E.D.N.Y.1985), *aff'd,* 818 F.2d 187 (2d Cir. 1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988)); *see also De-Soto,* 885 F.2d at 361 ("the expert must not base his opinion on mere speculation").

As the record amply demonstrates, Schaefer based his opinion on his examination of the physical evidence itself, including the crack confiscated from Brown, and on the police reports of Brown's arrest. These are precisely the types of evidence experts in the field of narcotics interdiction rely on to form their opinions. Although the evidence supporting an intention to distribute was not so overwhelming as to preclude a more innocent explanation of Brown's conduct, it does not follow that Schaefer's opinion lacks an adequate foundation in fact. *See Foster,* 939 F.2d at 452 (although certain behavior may have an innocent explanation, "it is a fair use of expert testimony to offer another explanation for [that] behavior"); *cf. DeSoto,* 885 F.2d at 360–61 ("everyday appearance of activity is not an automatic bar to the admission of expert testimony which may attribute a more sinister motive to the actions," but admission of that testimony does require special vigilance to avoid unfair prejudice) (citations omitted).

■ Brown further argues that Schaefer was permitted to draw an improper inference that the crack here "was intended for distribution" (Tr. at 156), thereby violating Rule 704(b) by invading the jury's prerogative to determine the ultimate issue of Brown's intent. Although it may appear at first blush that Schaefer crossed the line drawn by Rule 704(b), considering the statement in context and in conjunction with the surrounding testimony, we are convinced that Schaefer did not express an opinion as to Brown's mental state in violation of the rule. Schaefer testified that, based on his experience, the evidence indicated that the crack seized from Brown "was intended for distribution." Viewing his testimony as a whole, Schaefer was merely suggesting that the circumstances indicated that this crack probably would be distributed rather than used by Brown. For instance, Schaefer testified that a mere user of crack cocaine typically would not carry in his pants pocket a supply of twenty-five rocks in a bulky prescription bottle and risk confiscation of such a large supply. He also stated that crack cocaine dealers typically carry a weapon to protect their supply and that a user generally would have a pipe or some other smoking device. We are convinced that this testimony merely explained Schaefer's analysis of the facts supporting the inference of an intention to distribute, without directly addressing the issue of Brown's actual mental state. *See Dotson,* 817 F.2d at 1132 (testimony of tax expert highlighted evidence supporting inference of intent to evade income taxes on earnings from narcotics trafficking and did not draw the "forbidden conclusion" that Dotson "willfully and intentionally evaded income taxes"). Although we would have preferred that the agent use a word other than "intended" to indicate his analysis of the relevant circumstances,[2] we think it clear that Schaefer was not expressing an opinion as to Brown's actual mental state, but was merely aiding the jury to draw an inference from the evidence. Thus, his testimony "assisted the jury in coming to a conclusion as to [the defendant's] mental state ... [without making] that conclusion for them." *Foster,* 939 F.2d at 454.

We next consider whether Schaefer's testimony that the crack was intended for distribution should have been excluded because it expressly drew an inference that the jury was entitled to draw for itself. In *United. States v. Arenal,* 768 F.2d 263 (8th Cir.1985), the Eighth Circuit found similar testimony inadmissible on the ground that once the expert had explained the factual basis for the inference, the jury was competent to draw its own conclusions from the testimony. *Id.* at 269–70. Because the inference itself was not

---

**2.** For example, if Schaefer had responded that the circumstances suggested that this cocaine probably would be distributed, there would be no Rule 704(b) issue. It is only the expert's use of the word "intended" that implicates the rule.

beyond the jury's knowledge or experience, the court concluded that the testimony failed to satisfy the helpfulness requirement. *Id.* at 269.

As the District of Columbia Circuit observed in *Boney,* however, such a result is difficult to reconcile with Rule 704(a), which permits expert testimony on "an ultimate issue to be decided by the trier of fact," and with the cases that routinely permit expert testimony about typical behavior patterns and methods of operation of narcotics distributors. *See Boney,* 977 F.2d at 629–630. "[I]t is part of the normal role of the expert not merely to describe patterns of conduct in the abstract, but to connect actions in a specific case to those patterns—sometimes even to the point of testifying that the defendant was involved in criminal conduct." *Id.* at 629. *Boney* therefore adopted the rule of the Fifth and Ninth Circuits, which bars an expert witness from expressing an opinion on the ultimate question of a defendant's guilt or innocence. *See id.* at 630 (citing *United States v. Lockett,* 919 F.2d 585, 590 (9th Cir.1990); *Kinsey,* 843 F.2d at 388; *United States v. Masson,* 582 F.2d 961, 964 n. 5 (5th Cir.1978)). At the same time, the court refused to extend this prohibition to other types of inferences that generally would be permitted under Rules 702 and 704.[3] *See id.* Here, Schaefer did not express an opinion on Brown's guilt or innocence, nor did he express an opinion on Brown's mental state in violation of Rule 704(b). Instead, his testimony merely assisted the jury in interpreting the significance of the evidence by comparing Brown's activities to typical behavior patterns of crack users and distributors. Schaefer's testimony thus did not interfere with the jury's exclusive role. *See DeSoto,* 885 F.2d at 360–61; *see also Kinsey,* 843 F.2d at 388, 389.

Expert testimony that is otherwise admissible under Rules 702, 703, and 704 may nonetheless be excluded if its probative value is outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. In making such an argument here, Brown faces an uphill battle, not only because we accord special deference to a district court's assessment of probative value (*see, e.g., Hughes,* 970 F.2d at 233), but also because other aspects of Schaefer's testimony supported Brown's defense. *See Solis,* 923 F.2d at 551 & n. 5.

As we have already observed, defense counsel extensively and vigorously cross-examined Schaefer (*see United States v. Gonzalez,* 933 F.2d 417, 429 (7th Cir.1991)), and he was able to establish that: (1) Schaefer could not estimate the amount of crack cocaine an addict might need to achieve a particular high; (2) Schaefer was unable to quote a specific street value for the particular rocks seized; (3) a crack addict typically might purchase more than one rock for personal consumption and a crack addict may use as many as five rocks in one sitting; (4) a mere user of crack would not necessarily carry a pipe and might carry a gun to protect himself; (5) eighty-two dollars was not a large sum for a crack dealer to carry; and (6) crack dealers often carry beepers. This evidence supported Brown's contention that he intended to use rather than to distribute the crack. *See Solis,* 923 F.2d at 551; *DeSoto,* 885 F.2d at 361; *see also Hughes,* 970 F.2d at 234.

Viewing Schaefer's testimony as a whole, we believe it was helpful to the jury's resolution of whether Brown intended to distribute or to use the crack cocaine. Rather than encouraging juror speculation in a close case, Schaefer's testimony drew a clearer picture of the characteristics that distinguish crack users from crack dealers. *See Solis,* 923 F.2d at 551. The expert testimony thus provided a firmer foundation for the jury's determination of Brown's intent than would

---

**3.** As the District of Columbia Circuit observed in *Boney,* and as we discuss below, the admissibility of testimony making such inferences is always subject to Rule 403's balancing test, which calls for the exclusion of relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403; *see* 977 F.2d at 630–31; *see also Kinsey,* 843 F.2d at 389 (expert opinion on an ultimate issue

should not be excluded unless it is unfairly prejudicial or misleading); *see generally* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02] (1992 & Supp.1993). Moreover, a close reading of *Arenal,* including the dissenting opinion, suggests that the danger of unfair prejudice from the expert's testimony played an important role in the Eighth Circuit's decision to reverse the conviction. *See Arenal,* 768 F.2d at 270.

have been possible without that testimony. *See id.* In this respect, the Rule 403 balance clearly tips to the side of probative value.

At the same time, we recognize that in a close case the danger of unfair prejudice may be heightened by the "aura of special reliability" that often surrounds expert testimony, and that jurors may tend to give such testimony undue weight. *See, e.g., Boney,* 977 F.2d at 631. The danger of unfair prejudice is most serious where the expert also is an occurrence witness. *See Foster,* 939 F.2d at 452; *DeSoto,* 885 F.2d at 360, 361. Here, however, the jury was told that Schaefer was testifying only as an expert witness and that he had no prior involvement with the case. Furthermore, the district court instructed the jury that Schaefer's opinion was not binding and that the jury should consider that opinion in light of all the evidence.[4] We believe that any danger of unfair prejudice was thus adequately mitigated by the jury instruction.

### B. Sufficiency of the Evidence

 Brown argues that if we exclude the allegedly objectionable portion of Schaefer's testimony, the remaining evidence is insufficient to support a finding that Brown intended to distribute the crack cocaine. The government argues that even if we ignored those portions of Schaefer's testimony, the remainder of the evidence was sufficient to support Brown's conviction. We agree with the government.[5]

As we frequently have observed, a defendant challenging a conviction on the ground of insufficient evidence bears a heavy burden. *See Duarte,* 950 F.2d at 1259; *Briscoe,* 896 F.2d at 1504; *United States v. Ramirez,* 796 F.2d 212, 214 (7th Cir.1986). " 'Initially, we review all the evidence and all the reasonable inferences that can be drawn from [it] in the light most favorable to the government.' " *Briscoe,* 896 F.2d at 1504 (quoting *United States v. Nesbitt,* 852 F.2d 1502, 1509 (7th Cir.1988) (internal quotation omitted), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989)). We must uphold Brown's conviction if the evidence, when viewed in this light, establishes that *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). This standard does not permit us to reweigh the evidence or to reassess the credibility of witnesses. *See Ramirez,* 796 F.2d at 214. Thus, it is "[o]nly when the record contains *no* evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt," that an appellate court may overturn the jury's verdict. *Briscoe,* 896 F.2d at 1504 (emphasis in original, internal quotation omitted); *see also Ramirez,* 796 F.2d at 215.

Brown was arrested while attempting to evade police in an area of the Brandon Addition Housing Project where crack cocaine commonly was sold. Moreover, at the time

---

**4.** The district court provided the jury with the following instruction, taken from this court's Pattern Instruction 3.27:

You have heard testimony of an expert witness. This testimony is admissible where the subject matter involved requires knowledge, special study, training, or skill not within ordinary experience, and the witness is qualified to give an expert opinion.

However, the fact that an expert has given an opinion does not mean that it is binding upon you or that you are obligated to accept the expert's opinion as to the facts. You should assess the weight to be given to the expert opinion in the light of all the evidence in the case.

We note that the same cautionary instruction was given by the district court in *Foster,* 939 F.2d

at 453 & n. 10. *See also DeSoto,* 885 F.2d at 361.

**5.** As this court observed in *Duarte,* 950 F.2d at 1260–61, the Second Circuit has determined that "an expert's personal opinion that certain ambiguous conduct constitutes criminal behavior should be given little, if any, weight in assessing the sufficiency of the evidence." *Id.* at 1261 (discussing the Second Circuit's decision in *Boissoneault,* 926 F.2d at 234–35). Finding that the Second Circuit's analysis was inapplicable to the facts before it, the *Duarte* court left open the question of whether the rule of *Boissoneault* should reflect the law of this circuit. *Duarte,* 950 F.2d at 1261. Because we agree that Brown's conviction is supported by sufficient evidence even without considering Schaefer's testimony, the rule of *Boissoneault* would be of no help to Brown.

of his arrest, Brown was carrying a fully-loaded firearm, additional rounds of ammunition, and twenty-five rocks of crack cocaine in a large prescription bottle. These facts are sufficient to support the inference of an intention to distribute. In particular, courts have recognized that weapons found in conjunction with narcotics may be considered "tools of the trade," and that the presence of a firearm under such circumstances supports the inference of an intent to distribute. *See United States v. Garrett,* 903 F.2d 1105, 1113 & n. 11 (7th Cir.) (collecting cases), *cert. denied,* 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990); *United States v. Rush,* 890 F.2d 45, 49 (7th Cir.1989); *see also United States v. Tarazon,* 989 F.2d 1045, 1053 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993); *Dunn,* 846 F.2d at 764; *cf. Boissoneault,* 926 F.2d at 234 (defendant arrested for a traffic violation, displayed no furtive activity, and did not possess a gun or other weapon); *United States v. Franklin,* 728 F.2d 994, 995, 1000 (8th Cir.1984) (defendant arrested for minor traffic violation and did not possess a weapon).

Furthermore, Brown argues that a small amount of a controlled substance, standing alone, is insufficient to support the inference of an intent to distribute. Yet here, the jury had other evidence from which to infer that intent, including the circumstances of Brown's arrest, the estimated street value of the drugs, the size of the drug container, and possession of a loaded handgun and extra ammunition. Moreover, those cases where courts have found the evidence insufficient to support the inference of an intent to distribute involved significantly smaller drug quantities than that at issue here.[6] *See, e.g., Boissoneault,* 926 F.2d at 234–35 (5.31 grams of cocaine); *United States v. Gibbs,* 904 F.2d 52, 58 (D.C.Cir.1990) (15.5 grams of cocaine); *Franklin,* 728 F.2d at 998 (35 grams of cocaine). The quantity of crack cocaine seized from Brown, although not so large as immediately to suggest an intention to distribute (*see, e.g., U.S. v. Latham,* 874 F.2d 852, 862 (1st Cir.1989)), is not so small as to be inconsistent with that inference. The evidence

was sufficient to support the jury's verdict, and Brown's convictions are therefore

**AFFIRMED.**

---

**6.** For purposes of sentencing, 2.3 grams of a substance or mixture containing cocaine base is treated as the equivalent of 230 grams of cocaine. *See* U.S.S.G. § 2D1.1 and Commentary.